UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREENLEAF COMPASSIONATE CARE CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW SANTACROCE, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; ERICA FERRELLI, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; KIMBERLY AHERN, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; ROBERT JACQUARD, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; OLAYIWOLA ODUYINGBO, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; and LOCAL 328 OF THE UNITED FOOD AND COMMERCIAL WORKERS UNION, <br><br> Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Greenleaf Compassionate Care Center, Inc. ("Greenleaf") brings this Complaint against Matthew Santacroce, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; Erica Ferrelli, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; Kimberly Ahern, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; Robert Jacquard, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; Olayiwola Oduyingbo, in his official capacity as Commissioner on the Rhode Island

1

Cannabis Control Commission (collectively, the "Official Defendants"); and Local 328 of the United Food and Commercial Workers Union ("Local 328" and, together with the Official Defendants, "Defendants") for injunctive and declaratory relief because the Rhode Island Cannabis Act, R.I. Gen. Laws § 21-28.11-1 *et seq.* (the "Cannabis Act"), which required Greenleaf to enter into a labor peace agreement as a condition of state licensure and thereby deprived Greenleaf of its free bargaining rights, is preempted by the Supremacy Clause of the United States Constitution, at Article VI, Paragraph 2 (the "Supremacy Clause") and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (the "NLRA").

## INTRODUCTION

1. Greenleaf is a nonprofit corporation located in Rhode Island. Greenleaf received a medical marijuana license pursuant to a program that Rhode Island established in 2009. Greenleaf was one of the very first recipients of a medical marijuana license in the United States.

2. For more than a decade, Greenleaf has provided cannabis products, for medical purposes, to individuals in Rhode Island pursuant to the Edward O. Hawkins and Thomas C. Slater Medical Marijuana Act, R.I. Gen. Laws § 21-28.6-1 *et seq.* (the "Medical Marijuana Act"). As other states have recognized medical uses of cannabis, Greenleaf has expanded to serving individuals from other states. It now serves thousands of registered patients all around the country.

3. Pursuant to the Cannabis Act, which was enacted in 2022, Greenleaf now also sells legal, adult-use cannabis on a retail basis pursuant to a hybrid retail license from the Rhode Island Department of Business Regulation, Office of Cannabis Regulation, which it obtained upon completion of the required application and payment of the required fee.

4. This lawsuit challenges a specific provision of the Cannabis Act as unconstitutional. Under the Cannabis Act, § 21-28.11-12.2, adult-use marijuana providers are

required to enter into labor peace agreements as a condition of state licensure. This provision is referred to herein as the "LPA Mandate". Without state licensure, a marijuana provider cannot legally sell adult-use marijuana in Rhode Island.

5. The LPA Mandate applies not only to retailers, but also to "compassion centers licensed pursuant to chapter 28.6 of title 21" -- the Medical Marijuana Act. R.I. Gen. Laws § 21-28.11-12.2(b)). Therefore, even compassion centers that already were operating legally in the state, and did not intend to expand into the adult-use business, have become subject to this new requirement.

6. The LPA Mandate deprives employers of their bargaining power, forces them to agree to unfavorable terms, and deprives employees of their right to engage in labor activities protected under federal law, such as strikes.

7. The LPA Mandate is preempted by the Supremacy Clause of the United States Constitution and the NLRA.

8. As the Supreme Court has explained: "The NLRA requires an employer and a union to bargain in good faith, but it does not require them to reach agreement." Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 616 (1986).

9. Under the Supremacy Clause and the NLRA preemption doctrine, states do not have the right to upset the balance that Congress has struck or to impose labor requirements beyond the scope of the NLRA, unless (among other legal factors) such requirements protect the state's proprietary interests.

10. The Cannabis Act states that labor peace agreements "protect[] the state's proprietary interests," but it does not identify any such interests.

11. The Cannabis Act purports to connect the LPA Mandate to Rhode Island's

3

"proprietary interests," but Rhode Island does not actually have any proprietary interest in Greenleaf's operations or in marijuana operations more generally.

12. In 2022, in order to secure authorization to sell adult-use marijuana, Greenleaf entered into a labor peace agreement with terms materially less favorable than it would have but for the LPA Mandate. This has caused, and will continue to cause, material financial harm to Greenleaf.

## PARTIES

13. Plaintiff Greenleaf is a nonprofit corporation organized and existing under the laws of Rhode Island and having its principal place of business at 1637 West Main Road, Portsmouth, Rhode Island.

14. Defendant Matthew Santacroce ("Santacroce") is the Deputy Director of the Rhode Island Department of Business Regulation, which oversees the Office of Cannabis Regulation ("OCR"). The State of Rhode Island Department of Business Regulation was established by the Rhode Island General Assembly in 1939 and is organized under Title 42 of the Rhode Island General Laws. The Department of Business Regulation and the OCR maintain office(s) at 560 Jefferson Boulevard, Suite 204, Warwick, Rhode Island. At least until the confirmation of the Cannabis Control Commission in June 2023, Santacroce, in his capacity as Deputy Director of the Rhode Island Department of Business Regulation, oversaw the enforcement of the Cannabis Act, including related licensing activities. Santacroce and the other Official Defendants are amenable to suit pursuant to the *Ex parte Young* exception to sovereign immunity. *See* 209 U.S. 123 (1908).

15. Defendant Erica Ferrelli ("Ferrelli") is Chief of the OCR. At least until the confirmation of the Cannabis Control Commission in May 2023, Ferrelli participated in enforcement of the Cannabis Act.

16. Defendant Kimberly Ahern ("Ahern") is Chair of the Rhode Island Cannabis Control Commission. Ahern was appointed by Rhode Island Governor Dan McKee on May 18, 2023 and confirmed by the Rhode Island Senate on June 13, 2023. The Cannabis Control Commission oversees the regulation, licensing and control of adult-use and medical cannabis in Rhode Island.

17. Defendant Robert Jacquard ("Jacquard") is a Commissioner on the Rhode Island Cannabis Control Commission. Jacquard was appointed by Rhode Island Governor Dan McKee on May 18, 2023 and confirmed by the Rhode Island Senate on June 13, 2023.

18. Defendant Olayiwola Oduyingbo ("Oduyingbo") is a Commissioner on the Rhode Island Cannabis Control Commission. Oduyingbo was appointed by Rhode Island Governor Dan McKee on May 18, 2023 and confirmed by the Rhode Island Senate on June 13, 2023.

19. Defendant Local 328 is a union based in Rhode Island that includes workers at Greenleaf. Local 328's principal place of business is 278 Silver Spring Street, Providence, Rhode Island.

## JURISDICTION AND VENUE

20. This Court has jurisdiction to hear this dispute because, *inter alia*, this action for declaratory and injunctive relief arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the NLRA, and the Supremacy Clause.

21. This Court is a proper venue for this action because, *inter alia*, Greenleaf maintains a principal place of business in Rhode Island, the Official Defendants perform their work in Rhode Island, and Local 328 maintains a principal place of business in Rhode Island.

# FACTS

**A.     In 2021, following union pressure, Rhode Island added a labor peace agreement mandate to an adult-use cannabis bill.**

22.     On March 9, 2021, a bill proposing the Cannabis Authorization, Regulation and Taxation Act (the "Cannabis Bill") was introduced in the Rhode Island General Assembly.

23.     The Cannabis Bill, *inter alia*, proposed legalization and regulation of adult-use cannabis.

24.     When introduced, the Cannabis Bill did not include any mandate that entities enter into a labor peace agreement with their employees as a condition of receiving or continuing to hold a cannabis retail sales license.

25.     Following introduction of the Cannabis Bill, activists sought changes to the proposed legislation, including a requirement that employers receiving licenses under the legislation enter into labor peace agreements.

26.     After this advocacy had begun, the Cannabis Bill was revised in June of 2021 to include, *inter alia*, the following text:

> *The commission shall require* all applicants for cannabis retail sales licenses to submit an attestation signed by a bona fide labor organization stating that *the applicant has entered into a labor peace agreement* with such bona fide labor organization. The maintenance of a labor peace agreement with such bona fide labor organization by a licensed cannabis retailer shall be an ongoing material condition of the license for the cannabis retailer. Failure to enter or to make a good faith effort to enter, into a collective bargaining agreement within two hundred (200) days of the opening of an establishment of licensed cannabis retailer shall result in the suspension or revocation of the licensed cannabis retailer's license.

(Emphasis added.)

B.  **The Cannabis Act includes the LPA Mandate.**

27. Following further revisions, the Cannabis Bill was enacted in 2022 as the Cannabis Act.

28. The Cannabis Act provides in relevant part: "All retail licensees, including retail licensees pursuant to § 21-28.11-10.2, hybrid cannabis retailers pursuant to § 21.28.11-10, and compassion centers licensed pursuant to chapter 28.6 of title 21 shall, enter into, maintain, and abide by the terms of a labor peace agreement, and shall submit to the commission an attestation by a bona fide labor organization stating that the applicant meets this section's requirements." § 21-28.11-12.2(b).

C.  **The language of the Cannabis Act unsuccessfully attempts to avoid preemption under the NLRA.**

29. A state generally cannot require an employer to enter into a labor peace agreement with its employees; such a requirement is generally preempted by the NLRA.

30. In certain circumstances, when a state is acting as a market participant, such as when it is a party to a contract that is procuring services from another party, that state may be permitted to require a labor peace agreement to serve its own proprietary interests.

31. The Cannabis Act purports to meet this requirement by referencing proprietary interests in defining a "Labor peace agreement," namely as "an agreement between a licensee and a bona fide labor organization that, at a minimum, *protects the state's proprietary interests* by prohibiting labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity." R.I. Gen. Laws § 21-28.11-12.2(a)(2) (Emphasis added.)

32. However, the Cannabis Act does not identify "the state's proprietary interests" or explain the need for labor peace agreements to protect such interests.

33. Other than in the text of the LPA Mandate, the Cannabis Act does not mention any proprietary interests of Rhode Island.

34. When an earlier version of the LPA Mandate was introduced in June of 2021, it did not include any reference to proprietary interests.

35. The legislative history of the Cannabis Act does not contain any indication that the Rhode Island legislature considered whether the Cannabis Bill was relevant to any of its own proprietary interests, other than that language being added to the Cannabis Bill.

36. Upon information and belief, the LPA Mandate was not created to serve proprietary interests, but instead created to accomplish policy goals as a result of the lobbying efforts referenced above.

37. The Cannabis Act's conclusory reference to "the state's proprietary interests" was apparently intended to make it appear that the state has a proprietary interest and that, therefore, the statute avoids preemption on this basis, thereby dissuading a legal challenge.

38. However, as alluded to above and more fully set forth below, Rhode Island does not have any proprietary interests in the LPA Mandate as a matter of law and fact, and it is therefore preempted.

39. Additionally, the Cannabis Act states: "Nothing in this chapter shall be construed to limit the National Labor Relations Act, Labor Management Relations Act, the Railway Labor Act, or other conflicting federal law." § 21-28.11-12.2(e).

40. When an earlier version of the LPA Mandate was introduced in June of 2021, it did not include any reference to the NLRA.

41. The Cannabis Act's above-quoted statement apparently was inserted in an attempt to make it appear that the LPA Mandate does not conflict with the NLRA and that therefore the

Cannabis Act is not preempted (and therefore dissuade a challenge).

42. However, the LPA Mandate clearly and necessarily infringes upon the balance struck by the NLRA and conflicts with its provisions, and therefore the Cannabis Act is preempted.

**D.  Rhode Island's approach to an earlier marijuana act belies its claim of "proprietary interests" in the marijuana industry.**

43. In 2009, Rhode Island passed the Medical Marijuana Act, which established a medical marijuana program.

44. The Medical Marijuana Act did not assert that Rhode Island had any proprietary interests related to medical marijuana and did not require labor peace agreements.

45. The Medical Marijuana Act established a right for "compassion centers" to, *inter alia*, cultivate and dispense marijuana to qualified patients and their caregivers.

46. Under the Medical Marijuana Act, a compassion center could legally operate under state law only if, following such compassion center's submission of an application, the Rhode Island Department of Health (the "Department") granted a registration certificate to that compassion center.

47. Registration certificates were highly limited under the Medical Marijuana Act. The Department was instructed, "[w]ithin one hundred ninety (190) days of the effective date of this act," to "grant *a single* registration certificate to *a single* compassion center, providing at least one applicant ha[d] applied who [met] the requirements of this act." (Emphasis added.)

48. The Medical Marijuana Act did not impose any mandate that a compassion center enter into a labor peace agreement, even if it was the only compassion center that could operate legally in the state.

49. The Medical Marijuana Act did not include any statement that the State of Rhode Island had any proprietary interest in any trade, commerce, or other activity affected by the

Medical Marijuana Act.

50. That is because the State of Rhode Island and the Department do not have any proprietary interest relevant to the Medical Marijuana Act. Nor do they have any proprietary interest relevant to the Cannabis Act.

E. **Because of the LPA Mandate, Greenleaf was coerced into entering an oppressive collective bargaining agreement.**

51. In 2010, Greenleaf became the first entity in the United States to submit an application for licensure to operate a state-licensed marijuana dispensary. Rhode Island approved the application and provided Greenleaf with (initially) provisional licensing.

52. Because of federal opposition to Rhode Island's medical marijuana program, however, Greenleaf did not begin operations immediately. It began serving patients in May of 2013.

53. On April 5, 2021, retail workers voted to unionize. The retail workers joined Local 328.

54. Following the unionization vote, Greenleaf and Local 328 participated in the collective bargaining process.

55. Local 328 also was involved in lobbying for the inclusion of the LPA Mandate in the 2021 bill that would later become the Cannabis Act.

56. Local 328 was often intransigent in bargaining. Local 328 was apparently unwilling to compromise because it knew it would soon have increased leverage through the LPA Mandate.

57. The collective bargaining process continued into 2022.

58. Under the Cannabis Act, licensed compassion centers were permitted to begin adult-use sales on December 1, 2022 pending approval of a hybrid retail license and provided that

they had submitted the appropriate applications. The applications were required to include proof of labor peace agreements.

59. Under the Cannabis Act, even if Greenleaf had not intended to pursue a hybrid license, it would have been required to enter into a labor peace agreement.

60. Local 328 had essentially all the leverage, as it knew. Local 328 used the LPA Mandate as leverage to extract substantial concessions from Greenleaf.

61. Greenleaf and Local 328 entered into a collective bargaining agreement (the "CBA"), with terms largely unfavorable to Greenleaf, on August 17, 2022. The CBA included, *inter alia*, a one-time cash payment of one thousand dollars ($1,000) for all Local 328 members at Greenleaf.

62. Greenleaf submitted an application for authorization to operate as a hybrid compassion center (distributing marijuana for both medical and adult-use purposes) on November 10, 2022. Greenleaf's application was approved on November 22, 2022.

63. Under the LPA Mandate, Greenleaf will be required to be a party to a labor peace agreement at all times in order to operate, and it will continue to have little bargaining leverage in collective bargaining negotiations. Greenleaf will continue to suffer harm for so long as the LPA Mandate is in place and enforced.

## COUNT I
## 42 U.S.C. § 1983: DEPRIVATION OF RIGHTS UNDER THE NLRA

64. Greenleaf hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

65. The Supremacy Clause provides, *inter alia*, that "the Laws of the United States" are "the supreme Law of the Land."

66. The NLRA, a law of the United States, establishes a balance between rights of

employers and employees and preempts laws that interfere with this balance. In particular, it preempts states from regulating conduct that Congress intended to be unregulated and from forcing outcomes that Congress intended to leave to the outcome of the collective bargaining process.

67. As the Supreme Court has explained: "The NLRA requires an employer and a union to bargain in good faith, but it does not require them to reach agreement." Golden State Transit Corp., 475 U.S. at 616.

68. Further, when the State does not have a proprietary interest, such as being a party to a contract procuring services from another party, "[t]here is no doubt that . . . the [labor peace agreement] ordinance would be preempted by the National Labor Relations Act. States and their subdivisions are not permitted to regulate activities that are either expressly permitted or forbidden by the Act or that are 'reserved [by the Act] for market freedom.'" Metropolitan Milwaukee Ass'n of Com. v. Milwaukee Cnty., 431 F.3d 277, 278 (7th Cir. 2005) (quoting Bldg. & Constr. Trades Council v. Associated Builders and Contractors of Massachusetts/Rhode Island, Inc., 507 U.S. 218, 226-27 (1993)).

69. Rhode Island's requirement that an employer enter into a labor peace agreement as a condition of receiving a license under the Cannabis Act is preempted by the NLRA and deprives employers of their right not to reach an agreement with a union.

70. The NLRA also protects a union's rights in certain circumstances to initiate or encourage a strike, boycott or work stoppage. The LPA Mandate's deprivation of the employees' right to strike violates and is preempted by the NLRA.

71. In addition, in another recently enacted statute governing labor standards in renewable energy projects, the State of Rhode Island defined a labor peace agreement to include an agreement by the employer "not to disrupt efforts by the labor organizations to communicate

with, and attempt to organize and represent, the [employer's] employees." R.I. Gen. Laws § 39-26.9-2(6).  This statute may be interpreted to apply to the definition of a labor peace agreement set forth in the Cannabis Act, which merely sets forth the "minimum" attributes of a "Labor peace agreement" and therefore may include other aspects as well.

72. The NLRA grants an employer broad rights to express its views to employees about unionization, including its opposition to union representation, as long as those statements are not coercive.  The NLRA also grants an employer rights to restrict union organization activity during work time or on certain employer premises.  The LPA Mandate violates these employer rights provided under the NLRA, either expressly or implicitly, and is preempted by the NLRA.

73. The LPA Mandate is unenforceable and violates the NLRA.

74. By and through their work in carrying out the LPA Mandate, the Official Defendants are subjecting, or causing to be subjected, Greenleaf to the deprivation of its rights secured by the Supremacy Clause and the NLRA.

## COUNT II
## DECLARATORY JUDGMENT INVALIDATING THE CBA

75. Greenleaf hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

76. Local 328 lobbied for the LPA Mandate.

77. Local 328 knew that the LPA Mandate was, or likely was, preempted by the NLRA.

78. Local 328 knew that the LPA Mandate secured it a substantial bargaining advantage with Greenleaf.

79. With the unconstitutional LPA Mandate as leverage, Local 328 extracted favorable terms from Greenleaf in the CBA.

80. Greenleaf would not have entered into the CBA but for the LPA Mandate.

81. The CBA is unenforceable, void, and/or voidable at Greenleaf's election.

WHEREFORE Greenleaf seeks:

   a. a declaration that the LPA Mandate is unconstitutional, preempted by the NLRA, and void;

   b. a declaration that the CBA is unenforceable, void, and/voidable at its election;

   c. injunctive relief enjoining the Official Defendants from enforcing the LPA Mandate;

   d. an award of fees and costs pursuant to 42 U.S.C. § 1988; and

   e. such other and further relief as this Court finds just.

## Notice of Constitutional Question

Pursuant to Federal Rule of Civil Procedure 5.1, a Notice of Constitutional Question will be served in accordance with the Rule upon Rhode Island Attorney General Peter F. Neronha contemporaneously with service of process upon the named Defendants.

Respectfully submitted,

GREENLEAF COMPASSIONATE
CARE CENTER, INC.

By its attorneys,

By: /s/ Adam M. Ramos
Adam M. Ramos (#7591)
Craig M. Scott (#4237)
Nathalie M. Vega Crespo (#10265)
armos@hinckleyallen.com
cscott@hinckleyallen.com
nvega@hinckleyallen.com
HINCKLEY ALLEN
100 Westminster Street, Suite 1500
Providence, RI 02903
(T) (401) 274-2000
(F) (401) 277-9600

        Gerry Silver
(to be seeking admission *pro hac vice*)
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, NY 10019
(T) (212) 660-3096
(F) (212) 660-3001
gsilver@sullivanlaw.com

Erika L. Todd
(to be seeking admission *pro hac vice*)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(T) (617) 338-2825
(F) (617) 338-2880
etodd@sullivanlaw.com

Date: July 10, 2023