# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

GREENLEAF COMPASSIONATE CARE
CENTER, INC.,
     **Plaintiff,**

     **v.**                                      C.A. No. 1:23-cv-00282 MSM-LDA

MATTHEW SANTACROCE, ERICA
FERRELLI, KIMBERLY AHERN, ROBERT
JACQUARD,  OLAYIWOLA ODUYINGBO, and
LOCAL 328 OF THE UNITED FOOD AND
COMMERCIAL WORKERS UNION,
     **Defendants.**

## LOCAL 328'S MOTION TO DISMISS
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

### *Introduction*

Greenleaf Compassionate Care Center, Inc. ["Plaintiff" or "Greenleaf"] files this action to invalidate a collective bargaining agreement ["CBA"] that it says it entered into to satisfy the labor peace agreement ["LPA"] provision of the Rhode Island Cannabis Act ["the Cannabis Act"], G.L. §21-28.1-12.2.    Because the Court is without subject matter jurisdiction to invalidate the CBA and Plaintiff lacks standing to pursue the action, the Complaint should be dismissed.

In this Motion,[1] United Food and Commercial Workers, Local 328 ["Local 328" or "the Union"] challenges both the *sufficiency* and the *accuracy* of the jurisdictional allegations.  The jurisdictional allegations, Compl.¶ 20, are insufficient because neither the Declaratory Judgment Act ["DJA"], 29 U.S.C. § 2201 *et seq*., the National Labor Relations Act ["NLRA"], 29 U.S.C. § 151 *et seq*., nor the Supremacy Clause of the U.S. Constitution support subject matter jurisdiction against Local 328.  Plaintiff's Count II claim that that it was coerced by Local 328 to enter into a

---

[1]  Pursuant to Local Rule 7(c), Local 328 requests oral argument on the motion and proposes thirty minutes each for Local 328, Plaintiff and State Defendants.  An evidentiary hearing is not required at this time.

CBA is insufficient to establish subject matter jurisdiction because Plaintiff's exclusive remedy is at the National Labor Relations Board ["NLRB"] under the NLRA, not in the federal court. Absent jurisdiction to invalidate the CBA, Plaintiff also lacks standing to bring Count II.

Local 328 raises a factual challenge to jurisdiction. Plaintiff's claim that it entered into a CBA to satisfy the labor peace provision of the Cannabis Act is as inaccurate as it is implausible. Under Rule 12(b)(1), the Court should adjudicate the facts underlying this allegation and decide that Plaintiff lacks standing for the additional reasons that it did not suffer an "injury in fact" and there is no "direct causal connection" between the challenged action and the identified harm.[2] The Complaint should therefore be dismissed in its entirety.

### *Parties*

Plaintiff is an employer engaged in the sale of medical and adult-use cannabis. Compl. ¶¶ 1-3. Defendant United Food and Commercial Workers, Local 328 ["Local 328" or "the Union'] represents employees in collective bargaining, including certain of Plaintiff's employees. Affidavit of Sam Marvin ["Marvin Aff."] ¶¶ 1-3; Complaint ¶ 19. Mathew Santacroce, Erica Ferrelli, Kimberly Ahern, Robert Jacquard and Olayiwola Oduyingdo [collectively "State Defendants"] are officers or employees of governmental entities that regulate the RI cannabis industry. Complaint ¶¶ 14-18.

### *Facts*[3]

On February 16, 2021, Local 328 filed a representation petition on behalf of Greenleaf employees. The NLRB conducted a secret mail ballot election and on April 5, 2021, employees

---

[2]  As set forth *infra* at 10-17, the Court can resolve the Motion on jurisdictional grounds without factfinding on the standing issue.

[3]  The Court may consider matters outside the pleadings to resolve a factual challenge to jurisdiction. *Infra* at 8-9. These Facts are drawn from the Complaint ["Compl."], Affidavit of Sam Marvin ["Marvin Aff."] and attached exhibits ["Exh."].

selected Local 328 as their bargaining representative by a vote of 21 to 1.  The NLRB certified the election results and on April 16, 2021, Local 328 asked Greenleaf to begin negotiations.  Marvin Aff. ¶ 5.  On June 4, 2021, the Union made a comprehensive contract proposal, including a 'no-strike' proposal.  Exh. A.

Over the course of negotiations, Local 328 and Greenleaf discussed or entered into three (3) interim agreements ["IA"] on working conditions and reached numerous tentative agreements,[4] but Greenleaf never sought or proposed an LPA[5] or agreed to equivalent 'no-strike' language.  For example, Local 328 and Greenleaf discussed an IA to address union access, grievances, and disciplinary action.  The parties exchanged proposals but never reached agreement and the effort was abandoned.  In May, 2021, the parties reached agreement on an interim employee discount program.  Marvin Aff. ¶ 6.  On November 16, 2021, Local 328 and Greenleaf entered into an IA allowing employees to accept customer tips.  *Id.*

Greenleaf committed multiple unfair labor practices, before and after the Union election and during negotiations, including refusing to provide relevant information, terminating an employee for protected activity,[6] and unilaterally eliminating employee benefits and bargaining unit positions. Marvin Aff. ¶¶ 4,8.   On August 27, 2021, the NLRB issued a Complaint against Greenleaf.  Exh. B,C; Marvin Aff. 10.  On December 17, 2021, Greenleaf, Local 328 and the

---

[4]    An "interim agreement" establishes rules during negotiations.  A "tentative agreement" is contract language contingent on reaching a CBA.

[5]  "Labor peace agreement" [LPA] means an agreement … [that prohibits] labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity." G.L. § 21-28.11-12.2(a) (2).

[6]  On June 26, 2021, Greenleaf employees went on strike for one (1) day to protest one of the firings.  Marvin Aff. ¶ 9.

NLRB entered into an Informal Settlement Agreement ["ISA"] to resolve the Complaint and remedy the violations.   Exh. C; Marvin Aff. ¶¶ 10,11.

At negotiations on January 18, 2022, Greenleaf Owner and CEO Seth Bock ["Bock"] said he would talk to his attorney about Local 328's June 2021 'no-strike' proposal.   On January 20, 2022, Local 328's attorney contacted Greenleaf's attorney to attempt to resolve the 'no-strike' language, but Greenleaf did not accept the proposal or offer a counter.   Marvin Aff. ¶ 13.

On April 14, 2022, Greenleaf made a proposal that for the first time addressed 'no-strike' language.   In addition to strikes, Greenleaf proposed prohibiting lockouts and Union hand billing or notices on or near company property. Exh. E at Art. 14; Marvin Aff. ¶ 15.

On April 18, 2022, after seventeen (17) bargaining sessions, the parties were close to an agreement.   Bock asked Union Representative Joe Renzi ["Renzi"] to mediate the remaining issues.   Bock wrote: "Joe, I think the best way for us to work out a win-win is through federal mediation. I have reached out to a mediator to initiate meditation. I don't think we are far apart and I would like to wrap this up asap."   Local 328 agreed and emailed the Federal Mediation and Conciliation Service:   "We are currently in negotiations with Greenleaf Compassion Center, the employer Seth Bock has asked to have Federal Mediation get involved. We both agree we are very close to getting this done."   Exh. F; Marvin Aff. ¶ 16.

On May 25, 2022, the Cannabis Act passed.   Medical licensees like Greenleaf could apply to the RI Department of Business Regulation ["DBR"] for a hybrid license for adult-use sales beginning December 1, 2022, provided their home city approved a ballot referendum on November 8, 2022.   There was no application deadline.   Marvin Aff. ¶ 17.

On June 29, 2022, the first negotiating session after passage of the Cannabis Act, neither party made significant concessions.   Marvin Aff. ¶ 19.

Meanwhile, Greenleaf committed more unfair labor practices. On July 15, 2022, the NLRB notified Greenleaf that it intended to invoke the default judgment provision of the ISA and issue a new Complaint. Exh. G; Marvin Aff. ¶ 20-21. On July 19, 2022, the NLRB notified Greenleaf and DBR that "[u]nder the [National Labor Relations] Act, it is an unfair labor practice for an employer to fail or refuse to bargain collectively with the exclusive collective-bargaining representative over employees' terms and conditions of employment, and attempting to circumvent that obligation by negotiating agreements with *other* labor organizations concerning the collective-bargaining unit would constitute a separate violation of the Act." The new Complaint sought an order enjoining Greenleaf from negotiating with other labor unions without first notifying them of the Complaint. Exh. I; Marvin Aff. ¶ 21.

On August 3, 2022 - the first bargaining session after the new NLRB Complaint and July 19 letter - the parties reached agreement on a contract. Local 328 withdrew its proposal for an employee incentive plan; reduced its employee discount proposal from 40% to 25%; withdrew its proposal for a retroactive wage increase; and proposed a $2000.00 lump sum bonus for all employees. Greenleaf countered with a 20% discount and a lump sum payment of $1000.00 to three (3) of the bargaining unit members. At noon, Greenleaf added two (2) more members to the lump sum payment and requested withdrawal of the outstanding unfair labor practices. Local 328 reduced its proposal for a general wage increase and countered with a $1000.00 for employees with greater than one (1) year of service. Local 328 accepted Greenleaf's management rights proposal and conceded on Greenleaf's 'no-strike' proposal, agreeing to broader limitations than the Cannabis Act required. Marvin Aff. ¶ 22.

After all the contract terms were agreed, Greenleaf's attorney asked the Union to sign an attestation that the CBA satisfied the LPA provision. The attorney drafted the attestation and Renzi signed for the Union. Marvin Aff. ¶ 22.

On August 16, 2022, Local 328 and Greenleaf executed the CBA. Exh. J; Marvin Aff. ¶ 23.

On November 8, 2022, Portsmouth voted to legalize adult-use cannabis. Marvin Aff. ¶ 24. Greenleaf submitted its license application to DBR on November 10, 2022, and DBR approved the application on November 22, 2022. Compl.¶62. Greenleaf began recreational cannabis sales on December 1, 2022. Marvin Aff. ¶ 26.

On July 11, 2023, Plaintiff filed the instant action challenging the LPA provision of the Cannabis Act as preempted by the National Labor Relations Act ["NLRA"], 29 U.S.C. § 151 *et seq*. General Laws § 21-28.11-12.2(a) provides:

(a) For the purposes of this section, the following terms shall have the following meanings:

(1) "Bona fide labor organization" is a labor union that represents or is actively seeking to represent cannabis workers.

(2) "Labor peace agreement" means an agreement between a licensee and a bona fide labor organization that, at a minimum, protects the state's proprietary interests by prohibiting labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity.

(b) All retail licensees, including retail licensees pursuant to § 21-28.11-10.2, hybrid cannabis retailers pursuant to § 21-28.11-10, and compassion centers licensed pursuant to chapter 28.6 of this title shall enter into, maintain, and abide by the terms of a labor peace agreement, and shall submit to the commission an attestation by a bona fide labor organization stating that the applicant meets this section's requirements.

(c) Compassion centers authorized to purchase and deliver cannabis and cannabis products to registered qualifying patients and their registered primary caregivers or authorized purchasers, or other marijuana establishment licensees shall be required to meet the requirements established in this section before conducting retail adult sales of cannabis and cannabis products to consumers as a hybrid cannabis retailer pursuant to the provisions of this chapter.

(d) Compliance with the requirements of this section are deemed to be an ongoing material condition of the license, and any violation may result in suspension, revocation and/or non-renewal of the license by the commission.

(e) Nothing in this chapter shall be construed to limit the National Labor Relations Act, Labor Management Relations Act, the Railway Labor Act, or other conflicting federal law.

Plaintiff claims jurisdiction pursuant to "the Declaratory Judgment Act [29 U.S.C. § 2201 *et seq.* "DJA"], the NLRA and the Supremacy Clause [of the U.S. Constitution, Article VI(2)]." Compl.¶ 20. Plaintiff alleges that the LPA provision forced it to enter into a CBA and asks the Court to invalidate the CBA. Compl.¶¶ 63,79,80,81 and Prayer for Relief.

In this Motion, Local 328 challenges subject matter jurisdiction in Count II and Plaintiff's standing to bring the action. Plaintiff's standing hinges on its claim that it was compelled by the Cannabis Act to enter into a CBA, and subject matter jurisdiction requires that the claim against Local 328 has been entrusted by Congress to the federal courts. Because the CBA allegation is verifiably false and the claim against Local 328 is within the exclusive jurisdiction of the NLRB, rather than the DJA, NLRA or Supremacy Clause, the Complaint should be dismissed.

<u>***Argument***</u>

## I.    THE ACTION SHOULD BE DISMISSED FOR LACK OF JURSDICTION

### A.   *Standard of Review under Rule 12(b)(1)*

Pursuant to Rule 12(b)(1), a defendant may challenge jurisdictional allegations as *insufficient* or *inaccurate*:

There are two ways to challenge a court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). First, the defendant may challenge the *sufficiency* of the allegations relied upon in the complaint to support jurisdiction. Alternatively, the defendant can challenge the *accuracy* of the complaint's jurisdictional allegations. The court's standard of review differs depending on the challenge brought. Where a defendant challenges only the sufficiency of the complaint's jurisdictional facts, the standard of review is the same as the Rule 12(b)(6) standard. *Where a defendant challenges the accuracy of the plaintiffs' allegations, those allegations "are entitled to no presumptive*

*weight," and "the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties.*

*Freeman v. City of Keene*, 561 F. Supp. 3d 22, 25-26 (D.N.H. 2021) (Emphasis added).

"A factual attack contests jurisdiction in fact, regardless of what the complaint says."

*Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021). As a result, a court need not accept the plaintiff's allegations as true and instead has "broad discretion" to consider relevant and competent evidence submitted by the parties. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (3d ed. 2023) ("Wright & Miller").

> Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1) -- which we shall call a "factual challenge" -- permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. *See Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997). In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. *See Lawrence*, 919 F.2d at 1529; *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

> The rationale for this praxis is obvious. A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached. *See Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-364 (1st Cir. 2001). The court "may consider materials outside the pleadings." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *Narragansett Indian Tribe v. Chao*, 248 F. Supp. 2d 48, 50 (D.R.I. 2003) (Smith, J.). The court's task on a facial challenge to its subject-matter jurisdiction is to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Toddle Inn Franchising*, 8 F.4th at 61 n.5 (citation and quotation marks omitted).

Where defendant challenges only the sufficiency of the facts, the ordinary Rule 12(b)(6) standard applies. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71, 75 (1ˢᵗ Cir. 2014). But even under the less stringent standard, plaintiff "must plead 'sufficient factual matter to plausibly demonstrate standing to bring the action.'" *Perez-Kudzma v. United States*, 940 F.3d 142, 145 (1st Cir. 2019) (brackets omitted) (quoting *Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 7 (1st Cir. 2018)). Plaintiff bears "the burden of *clearly* alleging *definite facts* to demonstrate that jurisdiction is proper." *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 25 (1st Cir. 2007) (emphasis added).

> Motions to dismiss under Rule 12(b)(6) for the legal insufficiency of a complaint impose a similar standard. See *Katz*, 672 F.3d at 71 (citing *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006)). The court makes determinations about the sufficiency of a complaint through a "holistic, context-specific analysis." *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019). First, it "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Zenon v. Guzman*, 924 F.3d 611, 615 (1st Cir. 2019) (citations and quotation marks omitted). It then "evaluate[s] whether the remaining factual content supports a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) (quoting *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012)). In doing so, the court must accept "all well-pled facts in the complaint as true" and construe all reasonable inferences in the plaintiff's favor. See *Gilbert*, 915 F.3d at 80. But it "need not give weight to bare conclusions, unembellished by pertinent facts." *Shay*, 702 F.3d at 82-83. If the complaint's factual averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal will be warranted. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

*Sierra Club, Inc. v. Granite Shore Power LLC*, 2019 U.S. Dist. LEXIS 230292, at *9 (D.N.H. Sep. 13, 2019). Here again, the court may consider evidence outside the pleadings. See *Gonzales v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *Strahan v. Nielsen*, 2018 U.S. Dist. LEXIS 139544, 2018 WL 3966318, at *1 (D.N.H. 2018).

Here, there is no subject matter jurisdiction to invalidate a collective bargaining agreement and therefore no standing because the Court lacks jurisdiction to "redress" the alleged violation. These aspects of the Motion do not require may be addressed on the face of the Complaint.

Plaintiff did not enter into the CBA, or enter into the CBA on less favorable terms, in order to satisfy the LPA provision, so the "concrete injury" and "causation" elements of standing are absent. Those aspects of the Motion require factfinding. Either way, Plaintiff's jurisdictional allegations are insufficient. The Complaint should therefore be dismissed.

### B. The Court is Without Subject Matter Jurisdiction

"Within Constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Plaintiff mistakenly asserts jurisdiction under the DJA, the NLRA and the Supremacy Clause. Compl. ¶ 20. But the DJA is not a basis for jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671-74 (1950). The DJA "merely 'makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis.'" *See Alberto San, Inc. v. Consejo de Titulares del Condominio San Alberto,* 522 F.3d 1, 5 (1st Cir. 2008) (*quoting Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).

Neither does the Supremacy Clause support jurisdiction. *Chapman* v. *Houston Welfare Rights Organization*, 441 U.S. 600, 613 (1979) (Supremacy Clause not a source of any rights); *Associated Builders & Contractors, Inc. v. O'Connor*, 75 F. Supp. 2d 440, 444 (D. Md. 1999) (Supremacy Clause does not establish subject matter jurisdiction); *Am. Apparel Mfrs. Asso. v. Sargen*t, 384 F. Supp. 289, 290 (D. Mass. 1974) ("Since *Swift & Co. v. Wickham*, 382 U.S. 111 (1965) it is clear that [the Supremacy Clause] affords us no jurisdiction.").

That leaves the NLRA, which is enforceable exclusively through the NLRB.[7]

---

[7] Plaintiff claims jurisdiction over State Defendants via 42 U.S.C. § 1983. Compl. Count I. In *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989) the Supreme Court found § 1983 jurisdiction to enforce the NLRA against a state regulator. Section 1983 requires state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Plaintiff does not allege that Local 328 is a state actor or § 1983 jurisdiction over Local 328.

### 1. The NLRB has exclusive jurisdiction to enforce the NLRA

"[T]he NLRB has exclusive jurisdiction over disputes involving unfair labor practices. *Garmon*, 359 U.S. at 244–245.

> [T]he Supreme Court has made it clear that neither state nor federal courts have jurisdiction over suits directly involving activity which is arguably subject to Section 7 and Section 8 of the National Labor Relations Act (the Act) dealing with rights of employees as to organization, collective bargaining and unfair labor practices. *Vaca v. Sipes,* 386 U.S. 171 (1967). Exclusive jurisdiction over unfair labor practice claims rests with the NLRB. *Waggoner v. Dallaire,* 767 F.2d 589 (9th Cir. 1985). *See also, Sears, Roebuck & Co. v. Solien,* 450 F.2d 353 (8th Cir. 1971) (jurisdiction to prevent persons from engaging in unfair labor practices is exclusively vested in Board and court of appeals); *Wilson v. Milk Drivers and Dairy Emp. Union, Local 471,* 491 F.2d 200 (8th Cir. 1974) (same); *Buckley v. American Federation of Television and Radio Artists,* 496 F.2d 305 (2d Cir. 1974) (when unfair labor practices are alleged, federal courts must defer to exclusive competence of Board); *New Mexico Dist. Council of Carpenters, AFL-CIO v. Mayhew Co.,* 664 F.2d 215 (10th Cir. 1981) (same); *Lexington Cartage Co. v. International Brotherhood of Teamsters,* 713 F.2d 194 (6th Cir. 1983) (district courts have no jurisdiction over unfair labor practices cases).

*Class v. Ranger Am. Armored Servs.*, 245 F. Supp. 2d 370, 373 (D.P.R. 2003), aff'd, 89 F. App'x 746 (1st Cir. 2004) (unpubl. op.); *Aguayo v. Vaqueria Tres Monjitas, Inc.*, 2006 U.S. Dist. LEXIS 107877, at *6 (D.P.R. 2006) ("Under the principle of "*Garmon* preemption", the NLRA divests state and federal courts of the power to hear cases regarding conduct that is arguably protected or prohibited by the NLRA." *See also Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 276 (1971) (Garmon "established the general principle that the National Labor Relations Act pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act."). See generally *Chaulk Services, Inc. vs. Massachusetts Commission Against Discrimination,* 70 F.3d 1361, 1370 (1st Cir. 1995) (allowing claims to proceed "would be compromising the NLRB's role as chief arbiter of labor disputes.").

### 2. The Court is Without Jurisdiction under Section 301 of the LMRA

Excepting the NLRA, the sole source of federal jurisdiction to determine validity of a collective bargaining agreement is § 301(a) of the Labor-Management Relations Act of 1947, 29

U.S.C. § 185(a).[8] *Textron Lycoming Reciprocating Engine Div. v. United Auto Workers*, 523 U.S. 653 (U.S. 1998). Section 301(a) affords federal courts the limited role of "enforc[ing] … collective bargaining agreements," *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470 (1960), as an "exception to the primary jurisdiction doctrine [of the NLRB] . . . designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement." *Pace v. Honolulu Disposal Serv.*, 227 F.3d 1150, 1156 (9th Cir. 2000) (quoting *United Ass'n of Journeymen v. Valley Eng'rs*, 975 F.2d 611, 614 (9th Cir. 1992)).

Thus, for Plaintiff to obtain declaratory relief that the CBA is "unenforceable, void and/or voidable at Greenleaf's election," Compl.¶ 81; Prayer for Relief (a), it must state a claim for relief under § 301(a). But "'suits for violation of contracts' under § 301(a) *are not suits that claim a contract is invalid, but suits that claim a contract has been violated*." *Textron,* 523 U.S. at 657 (emphasis added). Plaintiff's claim that it was coerced into executing the CBA[9] is not a claim that the contract was violated and therefore does not state a cause of action under § 301.

In fact, Plaintiff's Complaint is very similar to the union's complaint in *Textron*. There, the union alleged that it was fraudulently induced to sign the collective-bargaining agreement. As redress, the Union sought "a declaratory judgment that the existing collective bargaining agreement between the parties is voidable at the option of UAW." The Supreme Court held that because the union's complaint alleges no violation of the collective bargaining agreement, "neither we nor the federal courts below have subject-matter jurisdiction over this case." *Id.* at 661.

---

[8]  Plaintiff 's Complaint ignores § 301. We discuss it here because Plaintiff has no other recourse for jurisdiction.

[9]  Plaintiff claims the contract is invalid because "[w]ith the unconstitutional LPA Mandate as leverage, Local 328 extracted favorable terms from Greenleaf in the CBA." See Compl.¶¶ 56,60,79,80.

In *dicta*, the *Textron* Court noted that a federal court might have jurisdiction to adjudicate the validity of a collective bargaining agreement (a) "if, in the course of deciding whether a plaintiff is entitled to relief for a defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with §301(a), adjudicate that defense" or (b) where a plaintiff is accused of violating a CBA. *Id.* at 658. *Textron*, 523 U.S. at 658. Here, no party has asserted that the contract is invalid as an affirmative defense to a breach of contract claim and Plaintiff does not say it has been accused of violating the CBA. Marvin Aff. ¶ 32.

The Ninth Circuit's opinion in *Nu Image* is instructive on this point. Plaintiff argued that its complaint fit the second *Textron* exception. 893 F.3d at 640. The Court disagreed:

> We hold that Nu Image has not crossed this initial threshold. Its claim is that part of the Overall CBA is invalid because IATSE misled Nu Image during the contract negotiations. [cleaned up]. Clearly, Nu Image seeks not the enforcement of a contract, but rather the *voiding of it*. Nu Image forthrightly asks "[f]or a judicial determination that the Residual Contribution provisions in the Basic Agreement do not apply to Nu Image." 2016 U.S. Dist. LEXIS 29620 at *6. While its motivation for seeking this relief may be an *accusation* of a contract violation by IATSE, Nu Image did not bring suit "*because a contract has been violated*." *Textron*, 523 U.S. at 657. *Textron* bars suits claiming a contract is void unless a plaintiff also alleges as an element of its claim a "violation of the collective-bargaining agreement," which Nu Image has not done. *Id.* at 661. To the contrary, Nu Image does not claim that either it or IATSE violated the Overall CBA. To restate: Nu Image filed suit seeking to void the CBA (which *Textron* clearly bars) based on an alleged state law misrepresentation claim (a theory the NLRB arguably has primary jurisdiction over, *see id.* at 662 (Stevens, J., concurring)), all under a statute that grants jurisdiction for only "[s]uits for violation of contracts." 29 U.S.C. § 185(a). This is a bridge too far.

*Id.* at 640-641.

Courts considering *Textron* confirm that § 301(a) jurisdiction requires an allegation that a collective bargaining agreement has been breached. In *Calvert, LLC*, plaintiff argued that the Court had jurisdiction to issue a declaratory judgment that it "is not a party to the CBA and owed Defendant no rights thereunder" because the union demanded enforcement of a CBA's neutrality

provisions. *AM/NS Calvert, LLC v. United Steel Workers*, 2022 U.S. Dist. LEXIS 32350 (S.D. Ala. 2022). The Court, *sua sponte*, disagreed, first noting that "the Declaratory Judgment Act as a matter of law cannot furnish subject matter jurisdiction." *Id.* at *3 (quoting *Patel v. Hamilton Medical Center, Inc.*, 967 F.3d 1190, 1194 (11th Cir. 2020)). The Court concluded:

> Because subject matter jurisdiction must exist at the moment suit is filed, the plaintiff must show that the defendant, before suit was filed, had accused the plaintiff of violating the CBA.

*Id.* at *4. In considering both the complaint and the letter requesting compliance with the neutrality provisions, the Court "was unable to identify any allegation or even indication that the defendant had accused the plaintiff of violating the CBA…. Because the plaintiff has not shouldered its burden of establishing subject matter jurisdiction at the legally relevant time," the Court dismissed the complaint for want of jurisdiction. *Id.*

Similarly, in *Chicago & N.E. Ill. Dist. Council Carpenters v. GDCNI/CAWCC,* 2002 U.S. Dist. LEXIS 2567 (N.D. Ill. Feb. 19, 2002), the union alleged that the employer agreed to the terms of a successor CBA while the employer denied that an agreement had been reached. The Court dismissed the § 301 suit because the union failed to assert a breach of contract:

> Here, Plaintiff's complaint fails to allege a violation of a contract, *i.e.* the agreement, and instead merely asserts a claim for a declaratory judgment as to the formation and validity of the contract. . . . Under *Textron*, such a claim standing alone fails to establish federal subject matter jurisdiction and prevents this court from reviewing the complaint.

*Id.* at 13. Notably, the union attempted to amend the complaint to add a claim of contract violation, by stating that defendant "is violating that valid contract in . . . not adhering to the provisions found in it." But it failed to cite any sections of the contract which were violated or to even suggest what action or inaction by defendant was violating the agreement. The Court rejected the union's argument: "[o]nce again, only legitimate allegations of contract violation confer upon this court the subject matter jurisdiction to assess contract validity." *Id.* at *4-5.

In *American Standard, Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union Local 7A,* 2003 U.S. Dist. LEXIS 10710, (N.D. Ohio 2003), the employer brought a § 301 suit against a union claiming that the parties had reached agreement on a contract and that the union's repudiation of that agreement amounted to a breach. The union argued that a contract had not been formed. The Court dismissed the suit because "employer is not claiming a specific breach of one or more terms of the . . . contract which both parties are implementing." 2003 U.S. Dist. LEXIS 10710, at *2. And according to *Textron*, the NLRB has primary jurisdiction to resolve disputes such as this that involve review of the collective bargaining process. *Id.*

Finally, in *Law Fabrication, LLC v. Local 15 of the Sheet Metal Workers Int'l Ass'n Bd. of Trs.,* 396 F. Supp. 2d 1306, 1309 (M.D. Fla 2005), plaintiff argued that *Textron* actually supported their assertion that this Court has subject matter jurisdiction over the declaratory judgment case, noting that "a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid." *Id.* at 658. The Court disagreed:

> [T]his case does not fit into *Textron's* exception cited by Plaintiff. Law Fabrication has not been alleged that Local 15 has accused it of violating the CBA. Although the Supreme Court recognized certain limited circumstances where a federal court would have subject matter jurisdiction, the Court stressed that "the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate 'suits for violation of contracts.'"

*Id.* at 658. The Court concluded that it lacked subject matter jurisdiction under § 301 because plaintiff had not alleged a violation of the CBA, but was instead asking the Court to rule on the validity of the agreement. *Id.*

A few courts have interpreted *Textron* to support jurisdiction when breach of contract is implied, rather than explicit. But, even under this expansive interpretation, a contract violation must be the basis for the complaint. See *Darigold, Inc. v. Teamsters, Local 524,* 2003 U.S. Dist. LEXIS 19322, 2003 WL 22295327 (E.D. Wash. Sept. 5, 2003) (threatened strike activity could

constitute breach of the contract's no-strike clause); *Bulkmatic Transp. Co. v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers & Union Local 407,* 213 F. Supp. 2d 946, 951 (N.D. Ind. 2002) (refusal to extend CBA to second facility would violate the contract.).

Moreover, even if the Court had jurisdiction to declare the contract void, it likely would not exercise that discretion given Plaintiff's failure to seek relief through the NLRA. *Smith v. Metro. Prop. & Liab. Ins. Co.*, 629 F.2d 757, 759 (2d Cir. 1980) ("district court may in its discretion refuse declaratory relief if the alternative remedy is more appropriate."). Again, the burden of proof here is on Plaintiff to establish that "favorable resolution of [its] claim would *likely* redress the professed injury." *R&D Master Enters. v. Fin. Oversight & Mgmt. Bd.*, 75 F.4th 41 (1st Cir. 2023) (emphasis added).

Here, there is no allegation that the Union breached the CBA or accused Greenleaf of doing so. Marvin Aff. ¶ 30. Consequently, this Court lacks subject matter jurisdiction.

### C. Plaintiff Lacks Standing[10]

"The Constitution limits the judicial power of the federal courts to actual cases and controversies." *Katz v. Pershing, LLC,* 672 F.3d 64, 72 (1st Cir. 2012) (citing U.S. Cons. Art. III, § 2 cl. 1). ). "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Id*. (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962). "The requirement of standing . . . has a core component derived directly from the Constitution. A plaintiff must allege

---

[10] Should the Court dismiss Count II on jurisdictional grounds, Local 328 would likely remain an "interested party" on Count I so the Court should nonetheless address standing.

personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Plaintiff must show it has a "personal stake in the outcome" by meeting a three-part test. *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006) (citing *Baker v. Carr*, 369 U.S. 1962). Specifically, Plaintiff must prove (1) a concrete and particularized injury in fact; (2) a causal connection that permits tracing the claimed injury to defendants' actions, and (3) a likelihood that prevailing in the action will afford some redress for the injury. *Weaver's Cove Energy, LLC v. RI Coastal Res. Mgt. Council*, 589 F.3d 458, 467 (1st Cir. 2009). This is the "familiar triad" of "injury, causation and redressability." *Davis v. FEC*, 554 U.S. 724, 734 (2008). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted); *Massachusetts v. U.S. Dept. of Health & Human Servs.*, 923 F.3d 209, 221 (1st Cir. 2019). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Katz*, 672 F.3d at 72 (quoting *Lujan*, 504 U.S. at 561) (internal quotation marks omitted).

### 1. *Plaintiff Cannot Prove an Injury in Fact*

Plaintiff must show that it suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-81 (2000).

> The first element, an alleged injury-in-fact, requires the plaintiff[s] to show "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical," or in simpler terms, some personal harm that "has either happened or is sufficiently threatening" rather than one that "might occur at some future time." *Katz*, 672 F.3d at 71-72 (citing *Lujan*, 504 U.S. at 560, 564).

*Sierra Club, Inc. v. Granite Shore Power LLC*, 2019 U.S. Dist. LEXIS 230292, at *11-12 (D.N.H. Sep. 13, 2019) (citations omitted). Plaintiff has alleged no facts on which the Court could find a concrete, particularized injury in fact. See *Lujan*, 504 U.S. 555 (injury too conjectural for plaintiffs who announced their intention, but lacked concrete plans, to visit foreign countries to see endangered species); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (injury too speculative for plaintiffs who feared their communications with foreign nationals might be intercepted pursuant to the Foreign Intelligence Surveillance Act); *Portland Pipe Line Corp. v. City of S. Portland*, 164 F. Supp. 3d 157, 180 (D. Me. 2016).

Plaintiff does not – surely cannot - contend that the 'no-strike' clause is an injury to Greenleaf.

Rather, Plaintiff suggests that the "injury in fact" is the CBA itself.; that it entered into a "largely unfavorable" CBA. Compl. E and ¶¶60,61. True enough – any party to a CBA would say the same thing, But even if this assertion is read to suggest that the terms were *more* unfavorable than they would have been without the LPA provision, the claim is conjectural and speculative. There is no factual basis for the Court to determine what Plaintiff (or Local 328) would have agreed to without the LPA provision, especially considering Plaintiff's unconventional bargaining strategy, multiple unfair labor practices, unrealistic proposals, etc.[11]

---

[11] Plaintiff also cannot claim that it will sustain an injury "sometime in the relatively near future." See *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11, (1995)(quoting *Lujan*, 504 U.S. at 560). See also *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ('threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'")(emphasis in original). The CBA extends to August 2024, Exh. I, and the contract terms continue until the parties reach impasse. *NLRB v. Katz,* 369 U.S. 736 (1962). Nor does the LPA provision interfere with ongoing negotiations or relationship with Local 328. See *R.I. Hospitality Ass'n v. City of Providence*, 667 F.3d 17, 25, n.4 (1st Cir. 2011) (Ordinance required successor employer to employ the predecessor's workforce for three (3) months).

### 2. *Plaintiff Cannot Prove Causation*

"The traceability (or causation) element "requires the plaintiff[s] to show a sufficiently direct causal connection between the challenged action and the identified harm." *Sierra Club, Inc. v. Granite Shore Power LLC*, 2019 U.S. Dist. LEXIS 230292, at *11-12 (D.N.H. Sep. 13, 2019) (citations omitted). Plaintiff cannot establish a "direct causal connection" between the LPA provision and its CBA. The evidence shows that Greenleaf entered into the CBA pursuant to its obligations under the NLRA, rather than under compulsion from the Cannabis Act.

At the outset, it is beyond belief that Greenleaf signed a CBA to obtain an LPA. No rational employer would enter into a comprehensive CBA, setting wages, benefits, working conditions, and the like just to obtain a 'no-strike' commitment *that it never even asked for* and that Local 328 gave to a half-dozen other employers without a bargaining relationship. By our lights, Plaintiff signed the CBA because its workers voted overwhelmingly in favor of Union representation and were willing to strike, it had a duty to bargain in good faith to reach agreement, it was at the wrong end of multiple NLRB proceedings, and the CBA terms overall were palatable.

### a. *Plaintiff Executed the CBA for Reasons Unrelated to the Cannabis Act.*

Plaintiff cannot establish a "direct causal connection" because it entered into the CBA for reasons unrelated to the Cannabis Act:

> 1. Plaintiff was required to execute the CBA pursuant to the National Labor Relations Act.

In April 2021, long before the Cannabis Act was filed, Local 328 was certified to represent Plaintiff's employees in collective bargaining. Consequently, under Section 8(a)(5) of the NLRA, Plaintiff had a duty to bargain in good faith with a sincere desire to reach agreement. 29 U. S. C. § 158 (d); *NLRB v. Truitt Mfg. Co*., 351 U.S. 149, 154-55 (1956) (Frankfurter, J., concurring); *Rivera-Vega ex rel. NLRB v. Conagra, Inc*., 876 F. Supp. 1350, 1363 (D.P.R. 1995). On August

3, 2023, when Plaintiff and Local 328 reached agreement on terms and conditions of employment, Plaintiff had a legal duty to execute the CBA. *NLRB v. Wooster Div. of Borg Warner Corp.*, 356 U.S. 342, 348-49 (1958) citing Section 8(d) of the Act, 29 U. S. C. § 158 (d) ("to bargain collectively [includes] execution of a written contract incorporating any agreement reached if requested by either party …"). Thus, Plaintiff had a duty to negotiate, seek agreement, and execute the CBA without regard to the Cannabis Act.

      2.  <u>Plaintiff agreed to the CBA for reasons unrelated to the Cannabis Act</u>.

First, the Court should note that Local 328 and Plaintiff were close to agreement before the Cannabis Act passed. On April 18, 2022, the parties exchanged correspondence confirming they were on the verge of a settlement. Bock wrote:

> Joe [Renzi, Local 328 negotiator], I think the best way for us to work out a win-win is through federal mediation. I have reached out to a mediator to initiate meditation. I don't think we are far apart and I would like to wrap this up asap.

Local 328 replied that " We both agree we are very close to getting this done." Exh. F.

Examining the negotiations, the Cannabis Act had no effect on bargaining and certainly did not cause Local 328 to become intransigent. The Cannabis Act passed in May, 2022. In the bargaining session immediately after passage, on June 29, 2022, neither party significantly changed its positions.[12] But on August 3, 2022, Local 328 (a) made concessions on the 'no-strike' clause,' *agreeing to broader limitations than required under the Cannabis Act*, including limits on hand billing and sympathy strikes; (b) agreed to Greenleaf's broader management rights proposal; (c) withdrew its proposal for an employee incentive plan and reduced its employee discount from 40% to 25%; and (d) withdrew its proposal for a retroactive wage increase and proposed a

---

[12]  According to the NLRB, Plaintiff spent much of this time sending bargaining representatives without authority to bargain and failing to schedule the mediation it requested. Exh. G.

$2000.00 lump sum bonus for all employees. Clearly the Cannabis Act did not embolden Local 328. Marvin Aff. ¶¶ 19-22.

Plaintiff's claim that it was 'forced' to agree to a $1000.00 lump sum bonus also belies the facts. After Local 328 withdrew its proposal for a retroactive wage increase and proposed a $2000.00 lump sum bonus for all employees Plaintiff counter-proposed a 20% discount and a lump sum payment of $1000.00 to three (3) of the bargaining unit members. *The $1000.00 payment was Plaintiff's proposal.* At noon, the mediator returned with a new proposal from Greenleaf, adding two (2) more members to the lump sum payment and requesting withdrawal of the outstanding unfair labor practices. Local 328 reduced its demand for a general wage increase and agreed to a $1000.00 for employees with greater than one (1) year of service. Marvin Aff. ¶ 22.

Of course, as a general matter, there is no correlation between LPAs and entering into a CBA. First, there is nothing inherent in the LPA provision that compels a party to enter into a CBA. Local 328 has executed 'standalone' LPA with six (6) RI cannabis industry employers, none of which have collective bargaining agreements with any union. None of these employers were forced to execute a CBA by the Cannabis Act generally or by Local 328 in particular, or executed a CBA to satisfy the LPA. Local 328 is also party to comparable collective bargaining agreements with retail cannabis facilities in Massachusetts, where there is no LPA provision. In Rhode Island, Local 328 has not achieved a CBA with several employers who executed LPA, and achieved a comparable CBA with an employer that had an LPA *with a different union*. Marvin Aff. ¶ 29.

3. <u>Plaintiff agreed to the CBA before it knew if it could sell adult-use cannabis</u>.

Plaintiff was under no compulsion to enter into the CBA when it did. Plaintiff agreed to the CBA before the host city (Portsmouth) voted whether to allow adult-use cannabis sales. That vote did not occur until November 8, 2022, three (3) months after Plaintiff and Local 328 reached

agreement on the CBA. Marvin Aff. ¶ 24. *Plaintiff entered into the CBA before it knew if it could ever sell recreational cannabis.* Plaintiff entered into the CBA months before its license application was submitted or approved, or when Plaintiff could lawfully sell adult-use cannabis. Compl.¶¶ 58,62. It is nonsensical to suggest that Plaintiff entered into a CBA to sell adult-use cannabis that it had not asked to sell, had not been approved to sell, could not sell in Portsmouth, and could not lawfully sell in RI.

4. <u>Plaintiff ignored multiple opportunities to enter into an LPA with Local 328</u>.

The Cannabis Act imposes a minimal 'no-strike' duty *on the union* as a condition of the facility's application for licensure. Local 328 proposed contract language that would have satisfied that condition in June, 2021, a year before the Cannabis Act passed. Plaintiff ignored this proposal until April 14, 2022, when it proposed vastly broader language than what the Cannabis Act required.

Plaintiff also *failed to propose a 'stand-alone' LPA* after passage of the Cannabis Act, even though it knew Local 328 would consider such an agreement. Plaintiff and Local 328 negotiated and reached agreements on discounts and customer tipping. Plaintiff knew Local 328 was open to such agreements, but failed to propose an LPA or tentative 'no-strike' agreement.

Finally, Plaintiff *forfeited* opportunities to enter into an LPA with another "bona fide labor organization." In the ordinary course, a prospective licensee may submit an LPA with *any* "bona fide labor organization." G.L. § 21-28.11-12.2(a)(1) and (2). But the NLRB put Plaintiff and DBR on notice that Plaintiff was prohibited from negotiating with another labor organization. Exs. H,I. Plaintiff's own misconduct limited its opportunity to negotiate an LPA with another union.

5. <u>Plaintiff ignored multiple opportunities to challenge the Cannabis Act</u>.

Although it had ample time to challenge the LPA provision as preempted, it *failed to complain to DBR, file its application without the LPA, or file an action for injunctive relief.* Plaintiff sat on its hands from between May 25 and December 1, 2022. In fact, it waited *eleven (11) months* to file this lawsuit.

If it acted promptly, Plaintiff might have obtained a narrow reading of the LPA provision from DBR, state court, or this Court. Section 21-28.11-12.2(e) provides that [n]othing in this chapter shall be construed to limit the National Labor Relations Act … or other conflicting federal law." Plainly the drafters anticipated a preemption challenge to the Cannabis Act and carved out an exception for federal law. The State might have offered an interpretation that would avoid any constitutional infirmity. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288 (1936) (Brandeis, J., concurring) (citing *Crowell v. Benson*, 285 U.S. 22, 62 (1932) (" it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided."). Cf. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) ('[C]ourts in virtually every English-speaking jurisdiction have held — by necessity — that *shall* means *may* in some contexts, and vice versa.') (citations omitted).

Or Plaintiff might have challenged the Cannabis Act on preemption grounds, as it does here.

Finally, Plaintiff failed to exercise its rights under the NLRA. Although it had ample time to challenge Local 328's 'illegal pressure,' it failed to file a NLRB charge that the Union was bargaining in bad faith or seek injunctive relief. 29 U.S.C. §§ 158(b),160(j).

Plaintiff's delay turns the DJA on its head.  The purpose of a declaratory judgment action is to "provide[] an opportunity for judicial determination of rights before action is taken subjecting a party to the possibility of liability."  *Forbo-Giubiasco S. A. v. Congoleum Corp.*, 516 F. Supp. 1210, 1216 (S.D.N.Y. 1981).  Here, Plaintiff voluntarily took the action it opposes and filed suit to extricate itself.[13]

### 3. *Plaintiff Cannot Prove Redressability*

Finally, the redressability element of standing requires Plaintiff to "show that a favorable resolution of [its] claim would likely redress the professed injury." *Sierra Club, Inc. v. Granite Shore Power LLC*, 2019 U.S. Dist. LEXIS 230292, at *11-12 (D.N.H. 2019) (citations omitted). Here, Plaintiff cannot prove redressability because the Court is without jurisdiction to "void" the CBA.  *Supra* at 11-16.

### *Conclusion*

Plaintiff cannot prove jurisdiction or standing.  There is no subject matter jurisdiction to consider claims against Local 328.  Plaintiff lacks standing because it has not suffered an "injury

---

[13]  Having applied for and accepted the license, Plaintiff should be barred from challenging the constitutionality of the Cannabis Act.  "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits."  *Ashwander*, 297 U.S. at 348 (Brandeis, J., concurring); *Fahey v. Mallonee*, 332 U.S. 245, 255 (1947); *Providence Journal Co. v. McCoy*, 94 F. Supp. 186, 196 (D.R.I. 1950) ("The plaintiffs refrained from applying for permission because if it were granted they would be faced with the rule that 'The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits.' (citing *Ashwander*, 297 U.S. at 348).  "Constitutional estoppel applies to prevent a party from enjoying the benefits of a government action while simultaneously challenging the constitutionality of that government action."  *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 440 (E.D.N.Y. 2021).  Because this doctrine has been applied "unevenly,"  *Arnett v. Kennedy*,416 U.S. 134, 153 (1974), we cite it here for the additional point that Plaintiff *elected*  not to challenge the Cannabis Act, so the LPA provision cannot reasonably be said to have *caused* the alleged harm.

in fact," there is no causal connection between the challenged action and the identified harm and there is no jurisdiction to redress the alleged violation. The Complaint should be dismissed.

Respectfully submitted
UFCW Local 328


/s/*Marc Gursky*_____
Marc Gursky, Esq.
GURSKY, WIENS & SHANLEY,
Attorneys at Law, Ltd.
20 Centerville Road
Warwick RI 02886
mgursky@rilaborlaw.com


## *Certification*

A true copy of the foregoing was electronically filed and served on all counsel of record via the ECF system and email on August 25, 2023.

Adam M. Ramos, Esq. – aramos@hinckleyallen.com
Craig M. Scott, Esq. – cscott@hinckleyallen.com
Nathalie M. Vega Crespo, Esq. – nvega@hinckleyallen.com
Gerry Silver, Esq. – gsilver@sullivanlaw.com
Erika L. Todd, Esq. – etodd@sullivanlaw.com
Miriam Weizenbaum, Chief Counsel – mweizenbaum@riag.ri.gov
Chelsea Baittinger, SAAG – cbaittinger@riag.ri.gov
Chrisanne Wyrzkowski, SAAG – cwyrzkowski@riag.ri.gov


/s/ Janine Durand