UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GREENLEAF COMPASSIONATE CARE
CENTER, INC.,
    Plaintiff,

v.

C.A. No. 1:23-cv-00282 MSM-LDA

MATTHEW SANTACROCE, ERICA FERRELLI,
KIMBERLY AHERN, ROBERT JACQUARD,
OLAYIWOLA ODUYINGBO, and LOCAL 328
OF THE UNITED FOOD AND COMMERCIAL
WORKERS UNION,
    Defendants.

### AFFIDAVIT OF SAM MARVIN

Being duly sworn, I hereby depose and say:

1. I am currently employed by United Food and Commercial Workers, Local 328 ["Local 328" or "the Union"], as a Union Representative. I have held that position since February 2023. My duties include representing Greenleaf Compassionate Care Center, Inc. ["Greenleaf"] employees in issues arising under their collective bargaining agreement ["CBA"].

2. I was previously Local 328's Organizing Director. My duties included helping Greenleaf employees organize with Local 328. I participated in collective bargaining negotiations and worked on unfair labor practice charges and National Labor Relations Board ["NLRB"] Complaints against Greenleaf.

3. On February 16, 2021, Local 328 filed a petition to represent Greenleaf employees in Portsmouth, RI. On March 4, 2021, Local 328 and Greenleaf stipulated to a secret ballot election. On April 5, 2021, employees selected Local 328 as their bargaining representative by a vote of 21 to 1. On April 12, 2021, the NLRB certified the election results.

4. During the pre-election period, Greenleaf committed a series of unfair labor practices, including illegal surveillance, retaliating and discriminating against employees for protected activity, changing benefits and working conditions, reclassifying employees as "supervisors" and

1

soliciting and promising to remedy grievances in exchange for employees opposing the Union. Local 328 filed unfair labor practice charges with the NLRB against Greenleaf.

5. On April 16, 2021, Local 328 asked Greenleaf to begin negotiations.

6. From late April through mid-May, 2021, Local 328 and Greenleaf discussed an Interim Agreement ["IA"] to address workplace issues, including union access, grievances, and disciplinary action, while the parties negotiated a comprehensive CBA. Neither party proposed interim 'no-strike' language. The parties went back and forth but never reached agreement and the effort was abandoned. However, on May 6, 2021, the parties agreed to an interim employee discount program and November 16, 2021, the parties entered into an IA allowing employees to accept customer tips.

7. On June 4, 2021, Local 328 made its first proposal for a comprehensive CBA, including 'no-strike' language. Ex. A at 9. Greenleaf did not accept the 'no-strike' proposal. Greenleaf did not make a counterproposal on 'no-strike' until April 14, 2022, the sixteenth (16) bargaining session.

8. After negotiations commenced, Greenleaf committed more unfair labor practices, including refusing to provide relevant information, terminating an employee for protected activity, and unilaterally eliminating employee benefits and bargaining unit positions. Local 328 filed more unfair labor practice charges with the NLRB.

9. On June 26, 2021, Greenleaf employees went on strike for one (1) day to protest one of the firings.

10. The NLRB determined that two (2) of the unfair labor practice charges had merit and on August 27, 2021, issued a Consolidate Complaint against Greenleaf. Ex. B.

11. The NLRB determined that seven (7) additional unfair labor practice charges had merit and on November 12, 2021, issued a Second Consolidated Complaint against Greenleaf. Ex. C.

12. On December 17, 2021, Greenleaf, Local 328 and the NLRB entered into an Informal Settlement Agreement ["ISA"] to resolve the Second Consolidated Complaint. Greenleaf agreed to remedy the unfair labor practices and bargain in good faith with Local 328. The ISA did not include a 'non-admissions' clause. Ex. D.

13. On January 18, 2022, Greenleaf Owner and CEO Seth Bock ["Bock"] said he would talk to his attorney (who was no longer attending bargaining sessions) about Local 328's 'no-strike' proposal. On January 20, 2022, our attorney contacted Greenleaf's attorney to address the Union's 'no-strike' proposal but Greenleaf did not accept the proposal or offer a counter-proposal.

14. In February, 2022, Local 328 filed more unfair labor charges with the NLRB.

15. On April 14, 2022, Bock submitted a CBA proposal that for the first time proposed 'no-strike' language. The proposal also prohibited Union hand billing or notices on or near company property. Ex. E, Article 14.

16. On April 18, 2022, Local 328 and Greenleaf agreed we were close to a CBA. Bock asked Union Representative Joe Renzi ["Renzi"] to agree to mediation through the Federal Mediation and Conciliation Service ["FMCS"] to resolve outstanding issues. Bock wrote: "Joe, I think the best way for us to work out a win-win is through federal mediation. I have reached out to a mediator to initiate meditation. I don't think we are far apart and I would like to wrap this up asap." The Union agreed to mediation. Renzi's email to FMCS on April 21, 2022, states: "We are currently in negotiations with Greenleaf Compassion Center, the employer Seth Bock has asked to have Federal Mediation get involved. We both agree we are very close to getting this done." Ex. F.

17. On May 25, 2022, the Cannabis Act passed. Medical licensees like Greenleaf could apply to the RI Department of Business Regulation ["DBR"] for a hybrid medical/adult use license for sales beginning December 1, 2022, provided their home city approved adult use sales in a ballot referendum on November 8, 2022. There was no application deadline.

3

18. On June 29, 2022 – the first negotiating session after passage of the Cannabis Act - neither party made significant concessions.

19. On July 15, 2022, the NLRB notified Greenleaf that it intended to revoke the ISA, invoke the default judgment provision, and issue a new Complaint with additional charges. Ex. H. Among the charges was the allegation that Greenleaf failed to send authorized bargaining representatives to negotiations and failed to schedule negotiations with the mediator from June 4, 2021, through June 29, 2022. The NLRB also asked for a "Special Remedy" prohibiting Greenleaf from negotiating an LPA with another union without previously disclosing the NLRB Complaints.

20. On July 19, 2022, the NLRB advised DBR and Greenleaf that "[u]nder the [National Labor Relations] Act, it is an unfair labor practice for an employer to fail or refuse to bargain collectively with the exclusive collective-bargaining representative over employees' terms and conditions of employment, and attempting to circumvent that obligation by negotiating agreements with *other* labor organizations concerning the collective-bargaining unit would constitute a separate violation of the Act." Ex. H.

21. On August 3, 2022 – the first bargaining session after the new Complaint – both parties made significant concessions and negotiations led to a CBA. Local 328 withdrew its employee incentive plan, reduced its employee discount from 40% to 25%; and substituted a $2000.00 lump sum bonus for a retroactive wage increase. Greenleaf counter-proposed a 20% discount and a lump sum payment of $1000.00 to three (3) of the bargaining unit members, later increasing that to five (5) members. Greenleaf also requested withdrawal of the outstanding unfair labor practices. In response, Local 328 refused to withdraw the unfair labor practices, reduced its wage increase and substituted a $1000.00 bonus for employees with greater than one (1) year of service (a total of about eight (8)). Local 328 conceded to limits on hand billing and sympathy strikes and accepted Greenleaf's management rights proposal. After all the contract terms were agreed,

Greenleaf's attorney asked the Union to sign an attestation that the CBA satisfied the LPA provision. We shook hands and left the session. At no time during this session, during bargaining, or until this lawsuit, did Greenleaf tell Local 328 it had been coerced into the CBA or entered the CBA due to the Cannabis Act.

22. On August 16, 2022, three and a half months before Greenleaf could sell adult-use cannabis, Local 328 and Greenleaf signed the CBA. Ex. I.

23. On November 8, 2022, Portsmouth voted to legalize adult-use sales.

24. Upon information and belief, Greenleaf submitted its hybrid license application to DBR on November 10, 2022, and DBR approved the application on November 22, 2022.

25. On December 1, 2022, Greenleaf began making adult-use cannabis sales.

26. Greenleaf never proposed an LPA to Local 328.

27. Greenleaf never proposed an IA incorporating the LPA provision or equivalent 'no-strike' language, although it knew that Local 328 would consider an IA.

28. Greenleaf refused to enter into a tentative agreement incorporating Local 328's 'no-strike' proposal or counter-propose equivalent language that would have satisfied the LPA provision.

29. The LPA provision has not impacted Local 328's ability to reach a contract. Local 328 has five (5) contracts with cannabis industry employers in Massachusetts, where there is no LPA provision. Local 328 has no contract with six (6) RI cannabis industry employers (not including Plaintiff), despite having an LPA. On July 17, 2023, Local 328 successfully organized a RI cannabis employer with which it does not have an LPA

30. Plaintiff and Local 328 are currently in compliance with the CBA.

The foregoing is true and correct to the best of my knowledge, information and belief.

_____

Sworn before me this 24th day of August, 2023.

_Cynthia A Estevao_
Notary Public
My commission expires: 10/6/25

[Notary Seal: CYNTHIA A. ESTEVAO, NOTARY PUBLIC, STATE OF RHODE ISLAND]