UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREENLEAF COMPASSIONATE CARE CENTER, INC., : <br> *Plaintiff*, : <br>  : <br> v. : <br>  : <br> MATTHEW SANTACROCE, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; ERICA FERRELLI, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; KIMBERLY AHERN, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; ROBERT JACQUARD, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; OLAYIWOLA ODUYINGBO, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; and LOCAL 328 OF THE UNITED FOOD AND COMMERCIAL WORKERS UNION, : <br> *Defendants*. : | C.A. No. 23-cv-282 |

### STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The State of Rhode Island legalized recreational cannabis through the passage of the Rhode Island Cannabis Act ("Cannabis Act"), enacted on May 25, 2022. R.I.G.L. § 21-28.11. On April 13, 2021, more than a year before passage of the Cannabis Act, Plaintiff, Greenleaf Compassionate Care Center, Inc. ("Greenleaf"), was required by law to bargain with Defendant, Local 328 of the United Food and Commercial Workers Union ("Local 328"), representing its employees. Now, eight (8) months after enactment of the Cannabis Act, Greenleaf asks this Court to void the collective bargaining agreement in which it entered by claiming that a labor peace agreement provision in the Cannabis Act forced the very agreement it was required to achieve. Because there

1

is no causal relationship between the legally-mandated collective bargaining agreement between Greenleaf and Local 328 and the Cannabis Act, Greenleaf fails to satisfy the central prong of standing – "fairly traceable."

The State Defendants, like Local 328, now move to dismiss Greenleaf's Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, because Greenleaf lacks standing to pursue their challenge to the State's Cannabis Act.

I.     **FACTUAL BACKGROUND**

Greenleaf is an employer licensed by the State of Rhode Island to sell medical and adult-use cannabis. ECF 1 ¶¶ 1-3. Local 328 represents employees in collective bargaining, including Greenleaf's retail employees. ECF 1 ¶ 19. Defendant Matthew Santacroce is the Deputy Director of the Rhode Island Department of Business Regulation, which oversees the Office of Cannabis Regulation. ECF 1 ¶ 14. Defendant Erica Ferrelli is chief of the Office of Cannabis Regulation. ECF 1 ¶ 15. Defendant Kimberly Ahern is the chair of the Rhode Island Cannabis Control Commission. ECF 1 ¶ 16. Defendant Robert Jacquard is a Commissioner on the Rhode Island Cannabis Control Commission. ECF 1 ¶ 17. Defendant Olayiwola Oduyingbo is a Commissioner on the Rhode Island Cannabis Control Commission. ECF 1 ¶ 18. The Rhode Island Cannabis Control Commission was created by the Cannabis Act. R.I.G.L. § 21-28.11-2.

Prior to the enactment of the Cannabis Act, which is at issue in the instant matter, Greenleaf was licensed and operating as a compassionate care center, which was licensed to sell medical cannabis. ECF 1. On February 16, 2021, Samuel T. Marvin, as Director of Organizing of Local 328 filed a petition with the National Labor Relations Board ("NLRB") requesting certification of Local 328 as representative of a bargaining unit consisting of Greenleaf retail employees. *See* Exhibit A, Petition for a Representation Election (RC). On or about March 12, 2021, the NLRB conducted a mail ballot election among eligible Greenleaf employees. *See* Exhibit B, Stipulated

Election Agreement.  The NLRB tallied the ballots on April 5, 2021, resulting in an election of Local 328 as representative of eligible Greenleaf employees.  *See* Exhibit C, Tally of Ballots; ECF 1 ¶ 53.  On April 13, 2021, the NLRB certified Local 328 as the exclusive collective bargaining representative of Greenleaf employees and ordered that Greenleaf participate in good faith bargaining with Local 328.[1]  *See* Exhibit D, Certification of Representative.

Three days later, on April 16, 2021, Local 328 requested that Greenleaf begin negotiating a Collective Bargaining Agreement ("CBA") with them.  ECF 1 ¶ 53.  On June 4, 2021, Local 328 submitted a proposed CBA which included a "No Strike or Lockout" clause.  ECF 25-2, p. 11.  Greenleaf and Local 328 extended their negotiations into 2022.  ECF 1 ¶ 57.

The Rhode Island Cannabis Act, R.I.G.L. § 21-28.11 *et seq*., was not enacted until May 25, 2022, approximately thirteen months after Greenleaf was required by law to negotiate a collective bargaining agreement with Local 328.  The Cannabis Act requires that all businesses licensed to sell cannabis in the State of Rhode Island "enter into, maintain, and abide by the terms of a labor peace agreement."  R.I.G.L. § 21-28.11-12.2(b).  A "Labor peace agreement" is defined by the Act as "an agreement between a licensee and a bona fide labor organization that, at a minimum, protects the state's proprietary interests by prohibiting *labor organizations and members* from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity."  R.I.G.L. § 21-28.11-12.2 (emphasis added).  Notably absent in this definition is any requirement that deprives employers of any rights conferred on them by the National Labor Relations Act, 29 U.S.C § 151 *et seq.* (the "NLRA").  In fact, R.I.G.L. § 21-28.11-12.2 preserves the NLRA.

---

[1] Greenleaf security, guards, retail managers, assistant retail managers, heads of delivery, executive assistants to the CEO, managers, supervisors, and professional employees as defined in the Act were excluded from representation. *Refer* to Exhibit D.

After more than a year of negotiations, Greenleaf and Local 328 signed a final collective bargaining agreement on August 17, 2022. ECF 1 ¶ 61. The agreed upon collective bargaining agreement includes a "No Strike or Lockout" provision, pursuant to which Greenleaf agreed to "no lockouts of employees during the term of [the] Agreement." ECF 25-10. The "No Lockout" agreement contained in the collective bargaining agreement is not required by the Cannabis Act's labor peace agreement mandate. R.I.G.L. § 21-28.11-12.2.

On November 8, 2022, cannabis was legalized in the Town of Portsmouth, where Greenleaf's business operation is located. It was only at this point Greenleaf was entitled to apply for, and qualified to receive, a license to sell adult-use cannabis. Thereafter, on November 10, 2022, Greenleaf applied to the State of Rhode Island for a license to sell adult-use cannabis. ECF 1 ¶ 62. Although the labor peace agreement mandate does not require a labor peace agreement with the same bona fide labor organization that is a party to a collective bargaining agreement, Greenleaf submitted an attestation from Local 328 that it had entered into a labor peace agreement with Greenleaf that satisfied R.I.G.L. § 21-28.11-12.2. *See* Exhibit E, Attestation. Greenleaf was permitted to start selling recreational cannabis as of December 1, 2022. *See* Exhibit F, Approval of Application Letter.

After more than eight (8) months of adult-use cannabis sales, Greenleaf now alleges that the collective bargaining agreement contains "terms largely unfavorable to Greenleaf" due to the pressure of satisfying the labor peace agreement provision mandated by the Cannabis Act, alleging a deprivation of rights and an unenforceable collective bargaining agreement. ECF ¶¶61 and 74. Greenleaf seeks declaratory and injunctive relief to invalidate its collective bargaining agreement with Local 328 and a ruling that the labor peace agreement provision of the Rhode Island Cannabis Act is unconstitutional and preempted by the NLRA. ECF 1 ¶ 81.

## II.    STANDARD OF REVIEW

The proper vehicle for challenging a court's subject matter jurisdiction, including a plaintiff's standing, is Federal Rule of Civil Procedure 12(b)(1). *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). "A motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction may raise either a facial challenge (where the moving party asserts that the complainant's allegations are insufficient on their face to state a basis for federal jurisdiction) or a factual challenge (where the moving party argues that the court lacks jurisdiction as a matter of fact)." *Spencer v. Doran*, No. 18-CV-1191-LM, 2021 WL 294556, at *2 (D.N.H. Jan. 28, 2021) (citing *Torres-Negron v. J &N Records, LLC*, 504 F.3d 151, 162, 162 n. 8 (1st Cir. 2007) (citations omitted). Regardless of the type of challenge, a plaintiff bears the burden of establishing standing. "The party invoking federal jurisdiction has the burden of establishing that it exists." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003).

Here, State Defendants present a factual challenge. In such circumstances, "there is no presumption of truthfulness attached to the plaintiff's allegations, and plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence." *Spencer*, 2021 WL 294556, at *2 (quoting 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed.)); *see also Biogen, Inc. v. Schering AG,* 954 F. Supp. 391, 395 (D. Mass. 1996) ("If a Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction . . . the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. . . For purposes of such a motion, the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court.") (citations and quotations omitted).

In conducting its fact finding, "[t]he court may consider exhibits and other documents

5

outside the pleadings on a Fed. R. Civ. P. 12(b)(1) motion." *Cuomo v. U.S. Bank, N.A. for Bear Stearns Asset Backed Sec. I, LLC, 2006-HE5*, No. CV 17-485 WES, 2018 WL 3993444, at *2 (D.R.I. Aug. 21, 2018); see also *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002). In doing so, "the Court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). "The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion." *Gonzalez*, 284 F.3d at 288.

Finally, it is well settled that one person lacks the standing to advance the constitutional rights of another. *Zell v. Ricci,* 321 F. Supp. 3d 285, 295 (D.R.I. 2018), *aff'd in part, vacated in part, remanded*, 957 F.3d 1 (1st Cir. 2020).

### III. ARGUMENT

#### A. Plaintiff lacks standing to challenge the labor peace agreement provision contained in the Rhode Island Cannabis Act.

This Court should dismiss Greenleaf's Complaint for lack of subject matter jurisdiction because Greenleaf lacks standing pursuant to Article III of the United States Constitution to challenge the labor peace agreement requirement contained in the Cannabis Act. The question of standing is jurisdictional and includes three elements; a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). The face of Greenleaf's Complaint, along with the facts, arguments, and evidence set forth by Local 328 in its Motion to Dismiss, show that Greenleaf fails to satisfy

6

the standing requirements necessary to proceed with its constitutional challenge against State Defendants.

### 1. Greenleaf has not suffered an injury in fact.

Here, dismissal for lack of standing is warranted because Greenleaf has failed to plausibly show the "constitutional requirement" of an injury in fact, i.e., "invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent," rather than "conjectural or hypothetical." *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court in *Spokeo* clarified that "concrete" and "particularized" constitute independent, necessary requirements for standing, and that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (quoting Black's Law Dictionary 479 (9th ed. 2009)).

Greenleaf's claimed injury is entirely conjectural and relies on the threat of an injury in the future. However, a "threatened injury must be certainly impending to constitute injury in fact,", and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). Greenleaf alleges merely possible future harm resulting from the Cannabis Act's requirement that it enter into a labor peace agreement with a bona fide labor organization, specifically speculating that "[u]nder the LPA Mandate, Greenleaf will be required to be a party to a labor peace agreement at all times in order to operate, and it will continue to have little bargaining leverage in collective bargaining negotiations." ECF 1 ¶ 63. Greenleaf goes on to allege that it will "continue to suffer harm for so long as the LPA Mandate is in place and enforced." *Id*. Fatally, Greenleaf cannot see ahead into the future. It is pure speculation to claim that Greenleaf will have the lower hand in future collective bargaining negotiations simply because it is required to agree that <u>employees</u> will not go on strike.

State Defendants' standing challenge in the instant matter is distinguishable from *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, which held that the plaintiff had standing to challenge the labor peace agreement mandate enacted by the City of Los Angeles. 873 F.3d 1074 (9th Cir. 2017). In *Airline Serv. Providers Ass'n*, the Ninth Circuit Court of Appeals stated that "we have recognized that '[t]he economic costs of complying with a licensing scheme can be sufficient for standing,' *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 980 (9th Cir. 2013), even if 'the extent of [the alleged] harm is not readily determinable.'" *Id*. at 1076 (citing *Cent. Ariz. Water Conservation Dist. V. EPA*, 990 F.2d 1531, 1538 (9th Cir. 1993)). The Court in *Airline Serv. Providers Ass'n* concluded that plaintiff "will at least have to devote resources, and thus incur economic costs, to participate in negotiations, mediation, and possibly even binding arbitration over a labor peace agreement, which they would not otherwise be required to discuss." *Id*. The Ninth Circuit Court of Appeals concluded that the time plaintiff spent in "those negotiations is itself a concrete injury." *Id*.

With respect to a standing analysis, the labor peace agreement mandate enacted by the City of Los Angeles[2] is entirely different from the labor peace agreement mandate contained in the Cannabis Act. *Id*. In fact, the City of Los Angeles' labor peace agreement, by its terms, imposes conditions on the employer, such as resolving disputes through mediation and binding arbitration. *Id*. In contrast, the Cannabis Act imposes no conditions on the employer. The only requirement explicitly stated by the Cannabis Act is that labor organizations and members are prohibited from striking, nothing more. In an attempt to circumvent this blatant missing puzzle piece of their case, Greenleaf compares the definition of labor peace agreement as stated in the Cannabis Act to the definition of labor peace agreement in "Labor Standards in Renewable Energy Projects" statute,

---

[2] The labor peace agreement mandate at issue in *Airline Serv. Providers Ass'n v. Los Angeles World Airports* was found to not be preempted. 873 F.3d 1074 (9th Cir. 2017).

R.I.G.L. § 39-26.9-2(6).[3]  ECF 1, ¶71.  In fact, these two definitions are notable by their differences.  The first sentences in both definitions are nearly identical; however, the second sentence in R.I.G.L. § 39-26.9-2(6), which requires concessions of the employer, is omitted from the Cannabis Act definition of labor peace agreement.  Greenleaf's suggestion that the R.I.G.L. § 39-26.9-2(6) definition of labor peace agreement "may be interpreted to apply to the definition of a labor peace agreement set forth in the Cannabis Act" is not plausible as the Labor Standards in Renewable Energy Projects statute is an entirely distinct statutory scheme.  ECF 1, ¶71.  The more obvious conclusion is that the Legislature was aware that a labor peace agreement mandate with bilateral burdens was an option and rejected that approach.[4]  In any event, had the legislature intended the Cannabis Act to impose additional requirements of the employer, it would have stated so, like R.I.G.L. § 39-26.9-2(6) does.

As such, Greenleaf cannot set forth any facts that rise above pure speculation that it will incur economic costs that are caused by compliance with the Labor Peace Agreement provision contained in the Cannabis Act.  Greenleaf is unable to point to anything contained in the Cannabis Act's labor peace agreement mandate that explicitly states that it is required to give up specific rights, participate in alternative dispute resolution, negotiate a collective bargaining agreement with a labor organization, or suffer a harm in any way.  The labor peace agreement mandate

---

[3] R.I.G.L. § 39-26.9-2(6) defines labor peace agreement as "an agreement between an entity and a labor organization that, at a minimum, protects the state's proprietary interest by prohibiting labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference during the deployment of a covered project.  This agreement means that the applicant has agreed not to disrupt efforts by the labor organizations to communicate with, and attempt to organize and represent, the applicant's employees.  This requirement shall not be applicable to maintenance work performed on renewable energy solar projects.

[4] The starting point for interpreting a statute is the statute's text – commonly known as the "Plain Meaning Rule." The United States Supreme Court has consistently held that "when [a] statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).  Courts may look to sources outside the statute at issue, i.e., other statutes or legislative history, only where a statute's text is ambiguous. *City of Providence v. Barr*, 954 F.3d 23, 31-32 (1st Cir. 2020).

benefits Greenleaf by ensuring the smooth operation of retail of recreational cannabis. Therefore, Greenleaf fails to show a concrete injury.

### 2. Greenleaf's alleged harm is not caused by the State Defendants.

Greenleaf's alleged harm is not "fairly traceable to" any "allegedly unlawful conduct" of the State Defendants. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). For Greenleaf's harm to be fairly traceable to State Defendants, Greenleaf must show "a sufficiently direct causal connection between the challenged action and the identified harm." *Dantzler, Inc. v. Empresas Berríos Inventory and Operations, Inc.,* 958 F.3d 38, 47 (1st Cir. 2020) (quoting *Katz v. Pershing, LLC,* 672 F.3d 64, 71 (1st Cir. 2012)). Such a connection "cannot be overly attenuated." *Donahue v. City of Boston,* 304 F.3d 110, 115 (1st Cir. 2002). "[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Article III." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40 (1976).

Specifically, Greenleaf fails to show that State Defendants caused or coerced it to agree to the current collective bargaining agreement entered into with Local 328. "[C]ausation is absent if the injury stems from the independent action of a third party," *Katz v. Pershing, LLC,* 672 F.3d 64, 71-72 (1st Cir. 2012), "so long as the injury is not the product of that third party's 'coercive effect,'" *Dantzler,* 958 F.3d at 47 (citing *Wine & Spirits Retailers, Inc. v. Rhode Island,* 418 F.3d 36, 45 (1st Cir. 2005)). "The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on third parties." *Dantzler,* 958 F.3d at 48.

In *Dantlzer*, a class of shippers brought a § 1983 lawsuit against, among others, Puerto Rico Ports Authority (PRPA). 958 F.3d at 42-43. Dantzler alleged that Puerto Rico Ports Authorities' collection of scanning fees from freight carriers, which were collected to offset a cargo

10

scanning program to improve the safety of the port, was a violation of federal and state laws. *Id*. at 45.  Dantzler claimed that the freight carriers were collecting additional fees from the shippers to pay for the fee PRPA charged the carriers to use their scanning facilities, resulting in economic harm to the shippers. *Id*. PRPA and other defendants challenged plaintiff's claims for lack of subject jurisdiction, arguing that plaintiff lacked standing to challenge the law at issue. *Id*.

The *Dantlzer* Court reversed the lower court, finding that the plaintiff shippers lacked standing as causation was absent. *Id*. at 49.  While the First Circuit found that Dantzler's allegation of harm satisfied the first element of injury in fact, the Court found that Dantzler failed "to plausibly allege that PRPA's assessment and collection of ESFs from third parties not before the court – i.e., the ocean freight carriers – directly caused its injury." *Id*. at 48.  The Court further found that the alleged harm claimed by plaintiff shippers were dependent upon the actions of a third party, the freight carriers. *Id*.  The Court also concluded that Dantzler's alleged harm was "nothing more than a bare hypothesis that [ocean freight carriers] possibly might push this aspect of [their] operational costs onto [Dantzler]."  *Id*. (citing *Katz*, 672 F.3d at 77.)  Therefore, the injury alleged was found to be indirect and not fairly traceable to PRPA. *Id*.

The United States Supreme Court has also found causation to be lacking due to the uncertainty of the decisions of third parties. *Simon*, 426 U.S. 26, 40 (1976).  In Simon, low-income individuals and organizations representing them brought a class action lawsuit against the Secretary of the Treasury and the Commissioner of Internal Revenue, claiming that an IRS policy of providing favorable tax treatment to hospitals that "did not serve indigents to the extent of the hospitals' financial ability," thereby encouraging hospitals to refuse services to low-income individuals. *Id*. at 26.  In its Complaint, the plaintiff set forth instances of refusal of treatment at hospitals that were privy to the favorable tax treatments. *Id*.

11

At the outset, the *Simon* Court found that the plaintiff organizations "which described themselves as dedicated to promoting access of the poor to health services," could not establish standing based on that goal alone as the concern was too abstract. *Id*. at 39-40. The Court then turned to the low-income individuals' standing. The Court concluded that plaintiffs lacked standing as the allegation that the "denial of access to hospital services in fact results from the [IRS policy]…" was purely speculative and could not be "fairly traced to petitioners' 'encouragement'" as the denial of medical services could "instead result from decisions made by the hospitals without regard to the tax implications." *Id*. at 42-43.

Traceability was recently addressed by this Court in *RI Assoc. of Coastal Taxpayers v. Peter Neronha*, No. CV 23-278 WES, 2023 WL 6121974 (D.R.I. Sept. 19, 2023). The plaintiff, Rhode Island Association of Coastal Taxpayers (RIACT) is a group of property owners who own/have an interest in beachfront properties in Rhode Island. *Id.*, at *1. RIACT sought to challenge a new law (H. 5174) which "expanded public beach access," alleging that the new law violated the Fifth Amendment by way of an unconstitutional taking. *Id*. Essentially, the new law expanded the amount of shoreline that was accessible to the public, which plaintiff argued constituted an unjust "taking" of private property. *Id*. As a result of the new law, RIACT "fear[ed] prosecution or citation if its members (property owners) attempt to eject or dissuade people from encroaching on their property." *Id*. at *6. Plaintiff sued the Rhode Island Attorney General, the Rhode Island Coastal Resources Management Council (CRMC) Executive Director, and the Rhode Island Department of Environmental Management (DEM) Director, in their official capacities only, who are the prosecutorial authorities that could prosecute RIACT members for violation of the law (should they violate it). *Id*. at *2-3. This Court dismissed RIACT's Complaint on the grounds that RIACT "failed to trace the injury claimed (the taking) to the Defendants sued…" *Id*. at *6. As

12

grounds, the Court found that RIACT failed to show that "its members 'intend to violate or are violating an existing law,' and 'the threat of prosecution is sufficiently real to provide standing.'" *Id*. at *6 (citing *Int'l Gam Tech. PLC v. Garland*, 628 F. Supp. 3d 393, 400 (D.R.I. 2022)). There existed a "disconnect between the harm RIACT's members fear and the enforcement of the Act." *Id*. at *8. This Court ultimately reaffirmed the longstanding rule that "[s]tanding cannot rest solely on speculation." *Id*. at *7 (citing *Roe v. Healey*, No. 22-1740, 2023 WL 5199870, at *5 (1st Cir. 2023)("A threatened harm that is too attenuated or too speculative does not provide standing to seek an injunction.")).

Like the cases described above, the facts as alleged by Greenleaf in its Complaint and as averred in Local 328's Motion to Dismiss do not evidence any causal connection or coercion between Greenleaf and State Defendants. Plaintiff's allegation that Greenleaf would not have entered into a collective bargaining agreement but for the labor peace agreement mandate is inconsistent with the record of evidence, as Greenleaf was *required* by the NLRB to negotiate a collective bargaining agreement with Local 328. Refer to Exhibit D. Clearly, Greenleaf's alleged harm is dependent on this fact and not connected or traceable to State Defendants.

Furthermore, Greenleaf and Local 328 agree that negotiations between them had been ongoing for approximately one (1) year prior to the enactment of the Cannabis Act. ECF 1 ¶ 54 and ECF 25. Additionally, said collective bargaining agreement was entered into months before Greenleaf applied to the State to sell recreational cannabis. ECF ¶¶61-62. Moreover, the initial draft of the collective bargaining agreement proposed by Local 328 on June 4, 2021, included a "No Strike or Lockout" provision, which stated "[d]uring the term of this Agreement, the Union agrees there will be no strikes and the Employer agrees there will be no lockouts." ECF 25-2, pg. 9. The proposed "No Strike" language was contained in the draft collective bargaining agreement

*prior* to the date that a draft of the Cannabis Act first introduced the labor peace agreement mandate (the Cannabis Act was revised on June 11, 2021). In further support of lack of coercion is the fact that the final collective bargaining agreement mirrored Greenleaf's proposed "no strike" language sent by Greenleaf to Local 328 on April 18, 2022, ECF 25-6, pg. 13, broadened the "No Strike" provision *in favor* of Greenleaf, while the "No Lockout" provision remained the same. ECF 25-10, pgs. 9-10.[5]

Most importantly, the Cannabis Act does not require Greenleaf or any employer to enter into a collective bargaining agreement, nor does it require Greenleaf to enter into a labor peace agreement with the same labor organization which it has a collective bargaining agreement with. Simply put, State Defendants did not cause Greenleaf to enter into a collective bargaining agreement, the elimination of which is what Greenleaf seeks. Clearly, Greenleaf's instant alleged harm is not traceable to the State Defendants.

The same is true for Greenleaf's allegation of future harm. Greenleaf speculates that the labor peace agreement mandate will cause Greenleaf to have "little bargaining leverage in collective bargaining negotiations." ECF 1 ¶ 63. This is nothing more than a mere hypothesis. To quote the Honorable Judge Smith's opinion in *RI Assoc. of Coastal Taxpayers,* dressing up Greenleaf's claim as a fear of "little bargaining leverage in collective bargaining negotiations" due

---

[5] While the proposed collective bargaining agreement dated June 4, 2021 simply stated that "the Union agrees there will be no strikes…", ECF 25-2, pg. 9, the signed and agreed upon collective bargaining agreement, effective August 17, 2022, expanded the Union's "no strike" agreement to read: "During the term of this Agreement, the Union agrees, for itself and on behalf of each member of the Bargaining Unit, that they shall not engage in any strike, picketing, sit-down, slowdown, nor work stoppage, nor any other concerted hindrance of or interference with Employer's operations or performances, for any reason whatsoever. The Union further agrees for itself and on behalf of each member of the Bargaining Unit not to hand out, distribute or post any Union notices, documents, handbills or any other information relating to the union, except as approved elsewhere in this Agreement, anywhere on company property. This Section applies to sympathy strikes and/or refusals to work by individual employees on account of disputes between Employer and non-unit employees, as well as Bargaining Unit employees, or other persons or parties. It shall also apply to disputes that are not grievable or arbitrable under this Agreement, to the extent permitted by law. ECF 25-10, pg. 9. The "No Lockout" provision remained the same, simply stating that Greenleaf agrees to "no lockouts of employees during the term of this Agreement…" ECF 25-10, pg. 10.

to the labor peace agreement mandate "is like putting lipstick on a pig." No. CV 23-278 WES, 2023 WL 6121974, at *7. There are many factors that could cause Greenleaf to concede to unfavorable terms in the future, but to causally link the labor peace agreement mandate to future concessions is too attenuated.

Again, the Cannabis Act does not require Greenleaf to be a party to a collective bargaining agreement, the NLRB does. Nor does the Cannabis Act require Greenleaf to maintain a labor peace agreement exclusively with Local 328. As such, Greenleaf's mandate that it negotiate collective bargaining agreements with Local 328 in the future is not fairly traceable to the State Defendants as it is entirely dependent on a third party and the law. Greenleaf's future collective bargaining negotiations and agreements, whether positive or negative for Greenleaf, is not caused by the State Defendants. To say otherwise would be based entirely on conjecture, which cannot withstand a challenge of jurisdictional standing.

As such, there is no proximate causation between Greenleaf's alleged harm (now and in the future) and the State Defendants. Having alleged "a causal chain dependent on actions of third parties[,]" Greenleaf faces a heightened burden that it has not met. *Dantzler*, 958 F.3d at 48; *see Lujan*, 504 U.S. at 561-62. State Defendants have no role in Greenleaf's present collective bargaining agreement, as ordered by the NLRB, or any future negotiations. Greenleaf's alleged harms are entirely dependent upon its own actions, as more thoroughly explained in Local 328's Motion to Dismiss. ECF 25.

### 3. Greenleaf's requested relief would not redress its alleged injury.

Similarly, because the alleged injury is not traceable to the conduct of the State Defendants, Greenleaf cannot establish that the remedies it seeks would redress that injury. Remedies

"ordinarily 'operate with respect to specific parties'" and "do not simply operate 'on legal rules in the abstract.'" *California v. Texas*, 141 S. Ct. at 2115 (quoting *Murphy v. National Collegiate Athletic Assn.*, 138 S. Ct. 1461, 1486, (2018) (Thomas, J., concurring)). To establish redressability, a plaintiff must show that "it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Merit Construction Alliance v. City of Quincy*, 759 F.3d 122, 127 (1st Cir. 2014) (quoting *Lujan*, 505 U.S. at 561). Moreover, "[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1639 (2023) (emphasis in original) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment)).

Greenleaf's request that the labor peace agreement provision in the Cannabis Act be declared void would not redress Greenleaf's current harm, which is the active collective bargaining agreement *that the NRLA requires of Greenleaf*. As Local 328 explains in its Motion to Dismiss, this Court does not have jurisdiction to void the collective bargaining agreement. ECF 25. Even if the labor peace agreement mandate is voided by this Court, Greenleaf will continue to have to negotiate future collective bargaining agreements by law, which always require concessions and compromises from both parties.

16

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, State Defendants' Motion to Dismiss must be granted. Accordingly, State Defendants respectfully request that the Court dismiss the Greenleaf Compassionate Care Center, Inc.'s Complaint.

Respectfully Submitted,

Matthew Santacroce, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; Erica Ferrelli, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; Kimberly Ahern, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; Robert Jacquard, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; Olayiwola Oduyingbo, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission

State Defendants,

BY:

**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Chrisanne Wyrzykowski*
Chrisanne Wyrzykowski (Bar No. 7565)
Assistant Attorney General
Office of the Attorney General
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2235
Fax: (401) 222-2995
CWyrzykowski@riag.ri.gov


*/s/ Chelsea Baittinger*
Chelsea Baittinger (Bar No. 9471)
Special Assistant Attorney General
Office of the Attorney General
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2058
Fax: (401) 222-2995
CBaittinger@riag.ri.gov

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on September 21, 2023, I filed and served the herein document through the electronic filing system on the attorneys of record. The herein document electronically filed and served is available for viewing and/or downloading from the ECF Filing System.

*/s/ Chelsea Baittinger*