UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREENLEAF COMPASSIONATE CARE CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW SANTACROCE, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; ERICA FERRELLI, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; KIMBERLY AHERN, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; ROBERT JACQUARD, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; OLAYIWOLA ODUYINGBO, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; and LOCAL 328 OF THE UNITED FOOD AND COMMERCIAL WORKERS UNION, <br><br> Defendants. | C.A. No. 1:23-cv-00282 MSM-LDA |

**PLAINTIFF GREENLEAF COMPASSIONATE CARE CENTER, INC.'S**
**OPPOSITION TO LOCAL 328'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

I.     In the Spring of 2021, Local 328 Began Representing Greenleaf Employees—and Simultaneously Lobbied for a Labor Peace Agreement Mandate in Cannabis Legislation. ...................................................................................................................... 2

II.    The LPA Mandate Accomplished its Goal and Deprived Greenleaf of Leverage in Negotiations. ................................................................................................................ 5

ARGUMENT .................................................................................................................... 6

I.     This Court Has Jurisdiction over this Federal Preemption Case. ....................... 6

    A.    This court has subject matter jurisdiction to consider whether federal law preempts Rhode Island's LPA Mandate. ............................................................ 6

        1.    This is a federal preemption case. ........................................................... 6

        2.    Federal courts have subject matter jurisdiction when states infringe on federal law. ............................................................................................... 7

    B.    Because it has jurisdiction, this Court can consider the CBA that resulted from the challenged law. ........................................................................................ 9

        1.    This Court's jurisdiction includes the CBA. ........................................... 9

        2.    Local 328 is wrong to claim that the Labor Management Relations Act limits this Court's authority. .................................................................. 10

II.    Greenleaf Has Standing to Challenge the LPA Mandate and Related CBA. ................. 12

    A.    The LPA Mandate directly caused Greenleaf injuries. ...................................... 12

        1.    The forced CBA injured Greenleaf. ...................................................... 13

        2.    Standing does not require a mathematical calculation of injury. .............. 14

    B.    Causation and redressability are clear. ............................................................. 14

    C.    Greenleaf's legal compliance does not deprive it of standing. ........................... 16

CONCLUSION.................................................................................................................. 1

i

# TABLE OF AUTHORITIES

## Cases

*Airline Serv. Providers Ass'n v. Los Angeles World Airports*,
    873 F.3d 1074 (9th Cir. 2017) ........................................................................

*Alongi v. Ford Motor Co.*,
    386 F.3d 716 (6th Cir. 2004) ........................................................................

*Belknap, Inc. v. Hale*,
    463 U.S. 491 (1983) .....................................................................................

*CNH Am. LLC v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. (UAW)*,
    645 F.3d 785 (6th Cir. 2011) ........................................................................

*Cohen v. Bradford Printing*,
    No. 10-126-ML, 2010 WL 2854443 (D.R.I. June 29, 2010) .........................

*Couser v. Shelby Cnty. Iowa*,
    No. 122CV00020SMRSBJ, 2023 WL 4420442 (S.D. Iowa July 10, 2023) ................

*Energy Recovery, Inc. v. Hauge*,
    133 F.Supp.2d 814 (E.D. Va. 2000) .............................................................

*FPL Energy Maine Hydro LLC v. F.E.R.C.*,
    551 F.3d 58 (1st Cir. 2008) ..........................................................................

*Golden State Transit Corp. v. City of Los Angeles*,
    475 U.S. 608 (1986) .....................................................................................

*Hillcrest Prop., LLP v. Pasco Cnty.*,
    731 F. Supp. 2d 1288 (M.D. Fla. 2010) ......................................................

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*,
    481 U.S. 851 (1987) .....................................................................................

*Iowa League of Cities v. E.P.A.*,
    711 F.3d 844 (8th Cir. 2013) ........................................................................

*Jackson-Bey v. Hanslmaier*,
    115 F.3d 1091 (2d Cir. 1997) .......................................................................

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..........................................................................

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ..........................................................................

*Loc. Union No. 12004, United Steelworkers of Am. v. Massachusetts*,
    377 F.3d 64, 75 (1st Cir. 2004) ......................................................

*Lozano v. City of Hazleton*,
    620 F.3d 170 (3d Cir. 2010) ............................................................

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................

*N.L.R.B. v. Ins. Agents' Int'l Union, AFL-CIO*,
    361 U.S. 477 (1960) ..........................................................................

*Nebraska Beef Producers Comm. v. Nebraska Brand Comm.*,
    287 F.Supp.3d 740 (D. Neb. 2018) .................................................

*Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*,
    270 F.3d 1018 (6th Cir. 2001) ........................................................

*Medicaid and Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli-Hernàndez*,
    No. CV 19-1940 (SCC), 2021 WL 792742, at *6 (D.R.I. Mar. 1, 2021) ....................................

*Operating Engineers Pension Tr. v. Wilson*,
    915 F.2d 535 (9th Cir. 1990) ..........................................................

*Outdoor Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*,
    983 F.3d 671 (4th Cir. 2020) ..........................................................

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
    656 F.3d 580 (7th Cir. 2011) ..........................................................

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) ............................................................................

*Stilwell v. Off. of Thrift Supervision*,
    569 F.3d 514 (D.C. Cir. 2009) ........................................................

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002) ..........................................................................

**Statutes**

28 U.S.C. § 1331 ...........................................................................................................

28 U.S.C. § 1367(a) ......................................................................................................

R.I. Gen. Laws § 21-28.11-12.2(b) ................................................................ *passim*

# PRELIMINARY STATEMENT

Local 328 of the United Food and Commercial Workers Union ("Local 328") lobbied for a labor peace agreement requirement in cannabis legislation to increase its bargaining leverage while it was negotiating against Greenleaf Compassionate Care Center, Inc. ("Greenleaf"). Having achieved that goal, Local 328 now seeks to shield the results from judicial review. Local 328's arguments fail, and this Court has jurisdiction over this federal preemption case.

Greenleaf's retail staff joined Local 328 in the spring of 2021. Soon after the unionization vote, Local 328 pushed Rhode Island to require that cannabis businesses enter into labor peace agreements as a condition of state licensure. Local 328's efforts were successful, and Rhode Island's Cannabis Act was enacted with a requirement that any cannabis business secure a union's agreement that workers would not strike or engage in any other disruptive activities (the "LPA Mandate"). Under the LPA Mandate, unless a business secures a union's agreement to forego these activities, a cannabis business cannot operate legally in the state. This gives unions enormous leverage in their negotiations with employers. The LPA Mandate is preempted because it upsets the deliberate balance that Congress established through the National Labor Relations Act ("NLRA").

In the meantime, Local 328 and Greenleaf had been negotiating for more than a year but had not reached agreement on the terms of a collective bargaining agreement. Once the LPA Mandate became law, Greenleaf lost its negotiating leverage, and the parties soon entered into a collective bargaining agreement (the "CBA"). The CBA contained terms that were unfavorable to Greenleaf, including a requirement that it make a one-time payment of $1,000 to most union members.

Local 328 asks this Court to dismiss the present action on the basis that this Court lacks subject matter jurisdiction. Yet this Court has clear jurisdiction to consider whether the LPA

Mandate is preempted by federal law. This Court does not need any separate basis for jurisdiction before it can award the related relief of invalidating a CBA that was obtained through an illegal law.

Local 328 also attacks Greenleaf's standing, arguing that it has not been injured. This is not a credible argument: If the LPA Mandate did not benefit unions to employers' detriment, Local 328 would not have sought it. The LPA Mandate caused Greenleaf numerous injuries, including deprivation of its NLRA rights, suffering government-compelled action, and deprivation of bargaining leverage. Greenleaf asks this Court to deny Local 328's Motion to Dismiss (the "Motion") so this case may proceed to the merits.

## FACTUAL BACKGROUND

This case is about a state licensing requirement that is preempted by federal law (which alone creates subject matter jurisdiction for this case) and a collective bargaining agreement that was wrongfully obtained because of the illegal licensing requirement—and by one of its chief lobbyists.[1]

I.   **In the Spring of 2021, Local 328 Began Representing Greenleaf Employees—and Simultaneously Lobbied for a Labor Peace Agreement Mandate in Cannabis Legislation.**

In April of 2021, certain sectors of Greenleaf's workforce voted to unionize and join Local 328. Exhibit A, Declaration of Seth Bock, ¶ 3. Since then, Local 328 has represented many of Greenleaf's workers.

On March 9, 2021, a bill proposing the Cannabis Authorization, Regulation and Taxation Act (the "Cannabis Bill") was introduced in the Rhode Island General Assembly. The Cannabis

---

[1] The "factual background" section in the Motion includes inflammatory accusations against Greenleaf that are not related to the subject matter of this case. Greenleaf strongly disagrees with the characterizations but proceeds to relevant matters.

Bill proposed, *inter alia*, legalization and regulation of adult-use cannabis. When it was first introduced, the Cannabis Bill had no requirement that cannabis businesses obtain labor peace agreements in order to obtain or maintain a license to sell cannabis. S. 0568, LC002305, Jan. Sess. (R.I. 2021).

Then activists, including Local 328, sought changes to the bill, including the addition of a labor peace agreement mandate. On May 7, 2021—while representing Greenleaf employees—Local 328 published a piece to its website in favor of labor peace agreement mandates. It wrote: "By including this measure, Rhode Island policymakers will be putting working families first by giving them a seat at the table." [2] The lobbying succeeded, and an initial draft of a labor peace agreement mandate was included in the revised bill in June of 2021. S. 0568 Substitute A, LC002305/SUB A/3, Jan. Sess. (R.I. 2021).

The union continued to advocate for labor peace agreement mandates. In the fall of 2021, before the law was enacted and while Greenleaf and Local 328 were in the midst of thus far unsuccessful negotiations in attempting to reach a CBA, a representative of the United Food and Commercial Workers Union claimed that LPAs "are a proven formula for success, increasing pay, providing benefits and protections for workers in the industry."[3]

The Cannabis Act became law on May 25, 2022. As enacted, its LPA Mandate provides that a licensee must, *inter alia*, "enter into, maintain, and abide by the terms of a labor peace agreement, and shall submit to the commission an attestation by a bona fide labor organization

---

[2] *UFCW Local 328 Urges Policymakers to Pass Equitable and Just Cannabis Legislation in Rhode Island*, UFCW (May 7, 2021), https://ufcw328.org/ufcw-local-328-urges-policymakers-to-pass-equitable-and-just-cannabis-legislation-in-rhode-island/.

[3] *New Report: Cannabis Workers Unionizing Leads to High Quality Jobs and Increases Standards in Fact-Growing Industry*, UFCW5, https://ufcw5.org/2021/09/new-report-cannabis-workers-unionizing-leads-to-higher-quality-jobs-and-increases-standards-in-fast-growing-industry/.

stating that the applicant meets this section's requirements." R.I. Gen. Laws § 21-28.11-12.2(b). The Cannabis Act defines an LPA as "an agreement between a licensee and a bona fide labor organization that, at a minimum, protects the state's proprietary interests by prohibiting labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity." *Id.* at § 21-28.11-12.2(a)(2).

Local 328, and other labor activists, did not engage in their lobbying because they wanted to relinquish their labor rights for nothing. They sought the LPA Mandate because they knew then that the employe would not only be forced to enter into a CBA (as there could be no LPA in a unionized workplace otherwise), but that they could also extract valuable concessions from employers if employer cooperation was necessary for state-required licensure. Regarding another labor peace agreement mandate, the Ninth Circuit has recognized that "if an employer may not operate without such an agreement, the employer may need to give benefits to its employees to induce them to enter the agreement." *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1077 (9th Cir. 2017). A cannabis provider cannot operate in Rhode Island without an LPA, so unions have enormous leverage to extract concessions.

Rep. Scott Slater, who sponsored the bill in the House, confirmed that the LPA Mandate was designed to benefit employees. He reflected on the LPA Mandate, saying: "I was always open to making sure jobs, and not just folks lucky enough to get a license, but their employees, were protected and had protections."[4] He also "said lawmakers supported the labor peace

---

[4] Lavin, Nancy, *Cannabis dispensary lawsuit challenges labor provisions of recreational marijuana law*, Rhode Island Current (July 11, 2023), https://rhodeislandcurrent.com/2023/07/11/cannabis-dispensary-lawsuit-challenges-labor-provisions-of-recreational-marijuana-law/#:~:text=During%20the%20collective%20bargaining%20process,leverage%20through%20the%20LPA%20mandate.%E2%80%9D.

agreement provision because they want the fledgling marijuana industry to provide good-paying, long-term jobs."[5]

## II. The LPA Mandate Accomplished its Goal and Deprived Greenleaf of Leverage in Negotiations.

Greenleaf and Local 328 negotiated for more than a year without reaching an agreement. Exhibit A at ¶ 5. Although Greenleaf and Local 328 agreed on numerous terms, they did not reach agreements on wage-related issues. *Id.* Local 328 was apparently unwilling to compromise on certain demands because it knew it would soon have increased leverage through the LPA Mandate.

Once the Cannabis Act was enacted, Greenleaf could not hold out much longer. It needed a labor peace agreement in order to apply for a hybrid license to begin adult-use sales. (Licensed compassion centers, like Greenleaf, were permitted to begin adult-use sales on December 1, 2022, pending approval of a hybrid retail license and provided that they had secured a labor peace agreement. R.I. Gen. Laws § 21-28.11-10; 21-28.11-12.2(c)).

Local 328 used the LPA Mandate as leverage to extract substantial concessions from Greenleaf. In June of 2022—the first negotiating session after the LPA Mandate was in effect— Local 328 and Greenleaf disagreed strongly on certain compensation terms, including Local 328's demand for one-time bonuses and to lock in hourly rates for a two-year term. Exhibit A at ¶ 8. Greenleaf's CEO, Seth Bock, became increasingly aware that Greenleaf was in a difficult position and, subject to any final negotiating he could accomplish, would have to agree to Local

[5] Mooney, Tom, *Portsmouth pot dispensary sues over 'labor peace agreement' in state cannabis law*, THE PROVIDENCE JOURNAL (July 11, 2023), https://www.providencejournal.com/story/news/2023/07/11/greenleaf-compassion-center-ri-pot-retail-marijuana-dispensary-suing-over-mandatory-labor-agreements/70401901007/.

328's proposed terms. *Id.* at ¶ 10. Local 328 and Greenleaf ultimately entered into a CBA on August 17, 2022. *Id.* at ¶ 11. The CBA included, *inter alia*, a one-time cash payment as Local 328 had wanted (the payment was for one thousand dollars ($1,000) for all Local 328 members at Greenleaf with at least one year of service) and fixed hourly pay rates for the two-year term of the CBA. *Id.* Greenleaf would not have agreed to pay a one-time bonus or to establish fixed hourly wages for a two-year period if not for the LPA Mandate. *Id.* at ¶ 13.

## ARGUMENT

### I.     This Court Has Jurisdiction over this Federal Preemption Case.

"It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). This court therefore has jurisdiction over this suit, in which Greenleaf seeks injunctive relief against the LPA Mandate.

Greenleaf also asks this Court to declare that its CBA with Local 328, which is the fruit of the illegal mandate (and Local 328's own lobbying for that mandate), to be void. This relief flows directly from Greenleaf's federal preemption claim and is a requested remedy that is part of the same case and controversy, so this Court has jurisdiction to consider Greenleaf's request.

### A.     This court has subject matter jurisdiction to consider whether federal law preempts Rhode Island's LPA Mandate.

#### 1.     This is a federal preemption case.

This case asks whether Rhode Island's LPA Mandate is preempted by federal law. Through the NLRA, Congress established a deliberate balance between employers and unions. One aspect of that balance is that "[t]he NLRA requires an employer and a union to bargain in good faith, but it does not require them to reach agreement." *Golden State Transit Corp. v. City*

*of Los Angeles*, 475 U.S. 608, 616 (1986). Yet Rhode Island *does* require them to reach, at a minimum, a labor peace agreement. This requirement violates the NLRA.

Moreover, because unions do not casually promise never to strike—which would amount to unilateral disarmament—an employer with a unionized workforce must secure the labor peace agreement through a CBA. This creates a significant intrusion on employers' rights and freedoms that the NLRA established.

This state-compelled agreement deprives employers of the economic power that the NLRA deliberately preserved. Under normal circumstances, if an employer is unwilling to agree to the union's proposed terms, it can continue operating without an agreement—as Greenleaf did, from April of 2021 to August of 2022. "The presence of economic weapons in reserve, and their actual exercise on occasion by the parties, is part and parcel of the system that the Wagner and Taft-Hartley Acts have recognized." *N.L.R.B. v. Ins. Agents' Int'l Union, AFL-CIO*, 361 U.S. 477, 489 (1960). "[F]ederal law intended to leave the employer and the union free to use their economic weapons against one another[.]" *Belknap, Inc. v. Hale*, 463 U.S. 491, 500 (1983). Accordingly, state or local requirements that "destroy[] the balance of power designed by Congress, and frustrate[] Congress' decision to leave open the use of economic weapons," are preempted. *Golden State Transit Corp.*, 475 U.S. at 619 (addressing requirement that a taxicab franchise and employees resolve labor dispute as a condition of licensure).

### 2. Federal courts have subject matter jurisdiction when states infringe on federal law.

Through this action, Greenleaf asks this Court to enjoin government officials from enforcing an invalid state law. Greenleaf's federal preemption challenge is squarely within this Court's authority. As the Supreme Court has explained:

> _It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights._ A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (emphasis added) (internal citation omitted).

Following *Shaw*, two decades later, the Supreme Court had "no doubt that federal courts have jurisdiction" to consider a case in which Verizon sought relief from an order of the FCC that it alleged to be preempted by federal law. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 642 (2002).

"*Verizon* and *Shaw* make clear that in suits against state officials for declaratory and injunctive relief, a plaintiff may invoke the jurisdiction of the federal courts by asserting a claim of preemption, even absent an explicit statutory cause of action." *Loc. Union No. 12004, United Steelworkers of Am. v. Massachusetts*, 377 F.3d 64, 75 (1st Cir. 2004) (finding jurisdiction to consider a union's claim that a Massachusetts Commission Against Discrimination proceeding was preempted).

Following *Verizon*, *Shaw*, and *Local Union*, in 2021, a court in this circuit found subject matter jurisdiction when "the government of Puerto Rico passed a law . . . regulating an area of Medicare Advantage that the federal statute expressly states cannot be regulated by the states." *Medicaid and Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli-Hernàndez*, No. CV 19-1940 (SCC), 2021 WL 792742, at *6 (D.R.I. Mar. 1, 2021), *aff'd,* 58 F.4th 5 (1st Cir. 2023).

This Court's jurisdiction to consider whether the Rhode Island law is preempted is well-established by decades-old precedent at the Supreme Court and in this Circuit.

8

**B.    Because it has jurisdiction, this Court can consider the CBA that resulted from the challenged law.**

The LPA Mandate and the CBA are inextricably linked. Local 328 itself lobbied for the LPA Mandate—in fact, as discussed above, it lobbied for the LPA Mandate while it was simultaneously negotiating with Greenleaf. Greenleaf's workplace unionized in April of 2021. On May 7, 2021, Local 328 published a piece to its website about labor peace agreement mandates. It wrote: "By including this measure, Rhode Island policymakers will be putting working families first by giving them a seat at the table."[6] A labor peace agreement mandate was inserted into the bill the next month. Later that year, while Greenleaf and Local 328 were still negotiating, a representative of the United Food and Commercial Workers Union claimed that LPAs "are a proven formula for success, increasing pay, providing benefits and protections for workers in the industry."[7]

**1.    This Court's jurisdiction includes the CBA.**

Greenleaf asks that, once this Court finds the law preempted, it also provide the related relief of invalidating the CBA that is the fruit of that invalid law. When a court has jurisdiction to hear a claim, it may provide the appropriate and just relief—which here includes invalidation of a collective bargaining agreement.

Even if this Court considered the request to invalidate the CBA to be an additional claim, this Court would have supplemental jurisdiction because the LPA Mandate and the CBA are "so

---

[6] *UFCW Local 328 Urges Policymakers to Pass Equitable and Just Cannabis Legislation in Rhode Island*, UFCW (May 7, 2021), https://ufcw328.org/ufcw-local-328-urges-policymakers-to-pass-equitable-and-just-cannabis-legislation-in-rhode-island/.

[7] *New Report: Cannabis Workers Unionizing Leads to High Quality Jobs and Increases Standards in Fast-Growing Industry*, UFCW5, https://ufcw5.org/2021/09/new-report-cannabis-workers-unionizing-leads-to-higher-quality-jobs-and-increases-standards-in-fast-growing-industry/.

related" that "they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). The LPA Mandate's invalidity is central to Greenleaf's challenge to the CBA. The issues are therefore sufficiently related for supplemental jurisdiction. *See Energy Recovery, Inc. v. Hauge*, 133 F.Supp.2d 814, 820 (E.D. Va. 2000) (supplemental jurisdiction where patent ownership was "a necessary predicate issue" to Lanham Act claims). Local 328 itself acknowledges that, if Count II were dismissed, "Local 328 would likely remain an 'interested party' on Count I[.]" Mot., 16 n.10.

### 2.      Local 328 is wrong to claim that the Labor Management Relations Act limits this Court's authority.

Local 328 argues that this Court could consider the CBA only if it had jurisdiction under Section 301 of the Labor-Management Relations Act. This is incorrect. First, as set forth above, this Court has subject matter jurisdiction over Greenleaf's claim of federal preemption regardless of the additional relief sought. Therefore, the appropriate remedies in the event the Court finds federal preemption here are questions for another day. Second, and in any event, supplemental jurisdiction encompasses claims regarding union agreements. *See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1026 (6th Cir. 2001) (supplemental jurisdiction over third party claims, against a union and its representative, of fraud and misrepresentation in connection with project agreements).

Local 328's argument relies on, yet overstates, the LMRA. That law merely restricts courts from interpreting and applying CBAs in the manner reserved to the National Labor Relations Board ("NLRB"). The NLRB has authority to interpret CBAs to provide "federal uniformity in the interpretation of contract terms[.]" *Int'l Bhd.. of Elec. Workers, AFL-CIO v.*

*Hechler*, 481 U.S. 851, 862 (1987). The present case is not about any ambiguity in the text of a CBA. When a "claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

Accordingly, Courts can evaluate a CBA's validity in light of the circumstances of its formation. For example, the Sixth Circuit allowed multiple tort claims to proceed where allegations turned on a union's false representations of its authority during the bargaining process. The Sixth Circuit found jurisdiction over these claims, reasoning that they "all turn on the UAW's pre-contractual conduct. None of them requires the court to interpret the CBA. All that the district court must do is determine whether the UAW made these statements and whether [plaintiff] reasonably relied on them." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 791 (6th Cir. 2011); *see also Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004) ("claims of fraudulent inducement to sign a labor contract do not normally give rise to § 301 preemption."). Likewise, the Ninth Circuit found that a claim for fraud in the inducement regarding an owner-operator agreement was properly brought because none of the elements—misrepresentation, knowledge of falsity, intention, justifiable reliance, and damages—"require[d] interpretation of the collective bargaining agreement." *Operating Engineers Pension Tr. v. Wilson*, 915 F.2d 535, 538 (9th Cir. 1990).

So too here. Greenleaf's federal preemption argument—the core of this case—does not require any interpretation of the CBA. Moreover, this Court does not need to interpret the CBA to find it invalid because of the circumstances in which it was formed.

## II. Greenleaf Has Standing to Challenge the LPA Mandate and Related CBA.

Greenleaf, a cannabis business, has standing to challenge the licensing regime that Rhode Island enforces against cannabis businesses. Its right to do so is self-evident. "When the suit is one challenging the legality of government action or inaction," courts ask "whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). As the law is directly addressed at Greenleaf, Greenleaf has standing for this reason alone. Standing is made clear for other reasons as well.

### A. The LPA Mandate directly caused Greenleaf injuries.

The LPA Mandate directly inflicts numerous injuries on Greenleaf, so the three elements of standing—injury, causation, and redressability—are plain. Greenleaf has standing because the LPA Mandate deprives Greenleaf of its rights under the NLRA to use economic weapons and to bargain without reaching an agreement. *See, e.g.*, *Golden State Transit Corp.*, 475 U.S. at 619 (recognizing right to use economic weapons); *Airline Service Providers Ass'n* 873 F.3d at 1077 (finding businesses were harmed by labor peace agreement mandate). Greenleaf has standing, as a regulated business, to challenge the licensing regime that it is required to comply with. *See, e.g.*, *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 871 (8th Cir. 2013) (parties "have a concrete interest . . . in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them"). And Greenleaf has standing to challenge government-compelled actions. *See, e.g.*, *Lozano v. City of Hazleton*, 620 F.3d 170, 185 (3d Cir. 2010) (standing established where plaintiffs were "direct targets of an ordinance they allege to be unconstitutional, complaining of what that ordinance would compel them to do"), vacated on other grounds, 563

12

U.S. 1030 (2011). Greenleaf's standing to challenge the LPA Mandate is set forth in detail in its Opposition to Government Defendants' Motion to Dismiss, which Greenleaf incorporates herein by reference.

### 1.    The forced CBA injured Greenleaf.

Greenleaf also suffered injuries specifically related to the CBA at issue. The LPA Mandate gave Local 328 considerable leverage in CBA negotiations. This constitutes an injury. The First Circuit has held that a regulated entity suffered an injury when it was deprived of a thirty-two year license, even though that entity was still allowed to continue operations. *FPL Energy Maine Hydro LLC v. F.E.R.C.*, 551 F.3d 58, 62 (1st Cir. 2008). The First Circuit found that the regulated entity was "hostage to further DEP [Department of Environmental Protection] Board proceedings in which the DEP Board has considerable leverage to impose stiffer requirements." *Id.* This sufficed to give the regulated entity "every incentive to litigate this case," and "its stake in the outcome [was] more than 'concrete' enough for Article III." *Id.* Like that regulated entity, Greenleaf is allowed to operate for now, but it is "hostage" to further negotiations in which Local 328 "has considerable leverage to impose stiffer requirements."[8] (The current CBA, which includes the required LPA, expires in the summer of 2024.) Already, pursuant to the CBA, Greenleaf has been required to fix wages for a two-year period and to pay certain employees a $1,000 bonus. Exhibit A at ¶¶ 11, 13.

Local 328 lobbied for the LPA Mandate for a reason. Its litigation-driven insistence that the LPA Mandate does not really matter is hardly plausible. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) ("In the end,

---

[8] *See also Cohen v. Bradford Printing*, No. 10-126-ML, 2010 WL 2854443, at *7 (D.R.I. June 29, 2010) (union showed risk of irreparable injury where it would "continue[] to lose negotiating leverage and support").

it strikes us as odd that the Agency is arguing that it must have a strict rule now to get truck drivers to be more compliant with HOS rules, but at the same time it is asserting that these rules are not meant to change anyone's immediate behavior enough to confer standing to challenge that regulation."); *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (finding it "more than a little ironic" that the agency "would suggest Petitioners lack standing and then, later in the same brief," label the petitioner a "prime example" of the "very problem the [r]ule was intended to address").

### 2. Standing does not require a mathematical calculation of injury.

Local 328 argues it "is conjectural and speculative" to argue what either party "would have agreed to without the LPA provision[.]" Mot., 18. But to establish standing, Greenleaf is merely required to establish the fact of injury, not to calculate the extent of that injury. "[P]otential difficulty in ascertaining and apportioning damages is not . . . an *independent* basis for denying standing where it is adequately alleged that a defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014) (considering standing under Lanham Act). Any difficulty in ascertaining damages merely vindicates Greenleaf's decision to seek declaratory relief rather than monetary damages. *See id.* at 135 (discussing availability of injunctive relief when monetary damages cannot be quantified "with sufficient certainty").

### B. Causation and redressability are clear.

Causation and redressability—the other two standing elements—are plain. Most of Greenleaf's injuries, including deprivation of its right under the NLRA, are caused directly by the statute itself. *See, e.g.*, *Couser v. Shelby Cnty. Iowa*, No. 122CV00020SMRSBJ, 2023 WL 4420442 at *8 (S.D. Iowa July 10, 2023) (finding causation where "The Ordinance is the reason

[plaintiff] must engage a wide range of compliance measures."); *Nebraska Beef Producers Comm. v. Nebraska Brand Comm.*, 287 F.Supp.3d 740, 749 (D. Neb. 2018) ("it is equally evident that those fees and regulatory burdens are traceable to the Brand Committee's enforcement of the Brand Act, and that enjoining that enforcement would redress the injury."). These injuries will cease as soon as this Court declares the LPA Mandate invalid and enjoins the Government Defendants from enforcing it. The CBA was also, of course, caused by Local 328, using the leverage it lobbied for.

Local 328 denies causation, seeking to blame Greenleaf for not asking Local 328 for "a 'stand-alone' LPA[.]" Mot., 22. Local 328 does *not* say it would have provided one, and Local 328 had no incentive to do so. Local 328 never offered Greenleaf a standalone CBA. Exhibit A at ¶ 9. Local 328 asserts that it has provided LPAs to some employers with which it did not have CBAs, but presumably those are not employers with which it had been engaged in protracted, adversarial bargaining. The most interesting part of Local 328's motion is what it lacks: an explanation of why it lobbied for the LPA Mandate, if not to enhance its negotiating leverage.

Local 328 makes two timing objections; both fail. It argues that Greenleaf "was under no compulsion to enter into the CBA when it did." Mot., 21. It is true that Greenleaf did not specifically need a CBA with a deadline of August 17, 2022. But Greenleaf needed to prepare its application materials, and with the LPA Mandate enacted into law, Greenleaf had nothing to gain by waiting. Both Greenleaf and Local 328 knew that Greenleaf could not afford to out-wait the union, and waiting just a few months would not have changed the bargaining leverage.

Local 328 also claims that Greenleaf did not learn whether Portsmouth would allow adult-use cannabis in August of 2022. This is incorrect; the Cannabis Act provides that towns and cities may not prevent an existing medical marijuana compassion center from engaging in

15

adult-use retail business. Cannabis Act § 21-28.11-26(a)(1)(i). Portsmouth had no ability to block Greenleaf from pursuing its hybrid license. Moreover, under the Cannabis Act, the LPA Mandate also applies to compassion care centers, so Greenleaf was required to obtain an LPA regardless of its retail activities. *Id.* at § 21-28.11-12.2(b) (LPA Mandate applying to, *inter alia*, "compassion centers licensed pursuant to chapter 28.6 of this title").

Local 328 pretends that the LPA Mandate added nothing to Greenleaf's existing obligations under the NLRA. Local 328 relies on the duty to bargain in good faith and the duty to execute an agreement if one is reached. Mot., pp. 19-20. It ignores the crucial middle step. As discussed above, the NLRA specifically does *not* require the parties to actually reach an agreement, whether globally or on any particular terms. *Golden State Transit Corp.*, 475 U.S. at 616 ("[T]he NLRA requires an employer and a union to bargain in good faith, but it does not require them to reach agreement."). The LPA Mandate does. That is what this case is about. If the LPA Mandate really did not add anything to the NLRA, Local 328 would not have sought it. In any event, it obviously does.

If the LPA Mandate is declared invalid, the next time Greenleaf negotiates with Local 328, both parties will be restored to the bargaining position they should rightly hold under the NLRA. If this Court declares the CBA invalid, this will promptly bring both parties to the bargaining table afresh, where they can bargain—for the first time ever—without the shadow of an impending, or actual, LPA Mandate.

**C.    Greenleaf's legal compliance does not deprive it of standing.**

Local 328 seeks to punish Greenleaf for complying with the LPA Mandate. In 2022, as a closely regulated business, Greenleaf was naturally focused on obtaining required licensure. It then filed this lawsuit within the year. Business that incur the expense of challenging invalid

16

laws are not *also* required to expose themselves to penalties and loss of licensure, or to become bankrupt while they maintain a principled objection.

To the contrary: "As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997); *see also Outdoor Bus. Ass'n, Inc. v. Dep't of Homeland Sec.,* 983 F.3d 671, 680 (4th Cir. 2020) (when an employer receives "every labor certification" it seeks, but suffers "alleged costs" from "new rules," it has suffered an injury in fact and has standing to challenge the rules); *Hillcrest Prop., LLP v. Pasco Cnty.*, 731 F. Supp. 2d 1288, 1297 (M.D. Fla. 2010) ("the landowner's voluntary compliance with the County's regulatory process presents no impediment to standing. In fact, voluntary compliance is irrelevant.").

Local 328 asserts that earlier action could have prompted Rhode Island to "offer[] an interpretation that would avoid any constitutional infirmity." Mot., 23. While this Court will address the merits question at a later stage, Greenleaf is not aware of *any* reading of the LPA provision that would avoid preemption, and in the months since this case was filed, neither the legislature nor the Government Defendants have suggested one.

## CONCLUSION

For the reasons set forth herein, and the reasons set forth in Greenleaf's Opposition to the

Government Defendants' Motion to Dismiss, Greenleaf respectfully asks this Court to deny

Local 328's motion.[9]

|                           | Respectfully submitted,                     |
|---------------------------|---------------------------------------------|
|                           | GREENLEAF COMPASSIONATE                     |
|                           | CARE CENTER, INC.                           |
| Dated: October 31, 2023   |                                             |
|                           | By its attorneys,                           |
|                           |                                             |
|                           | /s/ *Erika L. Todd*                         |
|                           | Gerry Silver                                |
|                           | (admitted *pro hac vice*)                   |
|                           | SULLIVAN & WORCESTER LLP                    |
|                           | 1633 Broadway                               |
|                           | New York, NY 10019                          |
|                           | (T) (212) 660-3096                          |
|                           | (F) (212) 660-3001                          |
|                           | gsilver@sullivanlaw.com                     |
|                           |                                             |
|                           | Erika L. Todd                               |
|                           | (admitted *pro hac vice*)                   |
|                           | SULLIVAN & WORCESTER LLP                    |
|                           | One Post Office Square                      |
|                           | Boston, MA 02109                            |
|                           | (T) (617) 338-2825                          |
|                           | (F) (617) 338-2880                          |
|                           | etodd@sullivanlaw.com                       |

---

[9] Greenleaf requests oral argument, with twenty minutes for the Plaintiff and twenty minutes for the Defendants (collectively).

/s/ *Adam M. Ramos*
Adam M. Ramos (#7591)
*armos@hinckleyallen.com*
Craig M. Scott (#4237)
*cscott@hinckleyallen.com*
HINCKLEY ALLEN
100 Westminster Street, Suite 1500
Providence, RI 02903
(T) (401) 274-2000
(F) (401) 277-9600

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the within document via mail, e-mail and/or the electronic filing system on this 31st day of October 2023 on:

| | |
|---|---|
| Marc Gursky, Esq. | Chelsea Baittinger, Esq. |
| GURSKY, WIENS & SHANLEY, | Special Assistant Attorney General |
| Attorneys at Law, Ltd. | *CBaittinger@riag.ri.gov* |
| 20 Centerville Road | Office of the Attorney General |
| Warwick RI 02886 | 150 South Main St. |
| *mgursky@rilaborlaw.com* | Providence, RI 02903 |

The document is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Erika L. Todd*
Erika L. Todd