UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREENLEAF COMPASSIONATE CARE CENTER, INC., <br> *Plaintiff*, <br><br> v. <br><br> MATTHEW SANTACROCE, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; ERICA FERRELLI, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; KIMBERLY AHERN, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; ROBERT JACQUARD, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; OLAYIWOLA ODUYINGBO, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; and LOCAL 328 OF THE UNITED FOOD AND COMMERCIAL WORKERS UNION, <br> *Defendants*. | C.A. No. 23-cv-282 |

**STATE DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

State Defendants hereby submit this Reply Memorandum of Law in support of their Motion to Dismiss Plaintiff Greenleaf Compassionate Care, Inc.'s (hereinafter "Plaintiff" or "Greenleaf") Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff's Memorandum in Support of its Response to State's Motion to Dismiss (hereinafter, "ECF 33") attempts to remedy the speculative nature of their injury by introducing Seth Bock's (hereinafter "Mr. Bock") Declaration.[1] However, Mr. Bock's Declaration merely reinforces the speculative nature of the harm as pleaded by the Complaint. It remains that Plaintiff

---

[1] Seth Bock is the Founder and Chief Executive Officer of Greenleaf.

1

has not pleaded a concrete harm that is fairly traceable to State Defendants. Speculation is a hurdle that Plaintiff cannot overcome to establish standing.

## ARGUMENT

### I. The Cannabis Act did not require Plaintiff Greenleaf to enter into a Collective Bargaining Agreement.

Plaintiff's argument is that the state law labor peace agreement requirement compelled Plaintiff to enter into a collective bargaining agreement just to secure a labor peace agreement. This is, of course, a logical and factual leap based on speculation and unsupported by evidence. Further, Plaintiff Greenleaf is still unable to fairly trace its alleged harm, having entered into a collective bargaining agreement, to the State Defendants. The labor peace agreement mandate at issue does not require Plaintiff to enter into a collective bargaining agreement.

#### A. Greenleaf's alleged harm is speculative and therefore not an injury in fact

Plaintiff Greenleaf's alleged harm must be concrete and particularized to survive a challenge of standing. Plaintiff continues down the path of claiming that the labor peace agreement mandate put it in a lesser position when negotiating. Specifically, Mr. Bock now exclaims in his Declaration that if "Greenleaf had not needed an LPA as a condition of licensure, [he] would not have agreed to pay one-time bonuses or to establish hourly wages for a two-year period." ECF 33-1, ¶13. This is entirely speculative and conclusory as Mr. Bock has failed to present facts/factual allegations showing how the labor peace agreement requirement supposedly was what caused him to have to agree to said terms.

Mr. Bock claims in his Declaration that because Plaintiff needed a labor peace agreement, he would have to agree to Local 328's proposed terms. ECF 33-1, ¶10. Yet, Plaintiff also explains that the law did not require the parties to reach an agreement on a collective bargaining agreement. ECF 33, pg. 11. A lack of factual allegations showing that the labor peace agreement mandate put

2

Plaintiff in a lesser bargaining position or that the labor peace agreement was the reason for the alleged unfavorable terms in the collective bargaining agreement is evident.  Greenleaf stands in just as, if not more, a speculative position as it did when it filed its Complaint.

### B. State Defendants did not cause Plaintiff's alleged harm

As stated in Local 328's Motion to Dismiss, and notably unrebutted in Plaintiff's Response, Plaintiff was under threat of numerous Complaints filed by the NLRB for various unfair labor practices against its employees.  ECF 25, pgs. 3-5., ECF 26.  To resolve these Complaints and pursuant to the NLRA, Plaintiff was required to bargain in good faith with Local 328.  Id. Still, an agreement on a collective bargaining agreement was not mandatory.  Yet, Plaintiff ultimately agreed and signed the collective bargaining agreement at issue.  State Defendants did not cause Plaintiff to agree to said collective bargaining agreement.  The collective bargaining agreement is wholly separate from a labor peace agreement.

Plaintiff stood in the position where it could have requested a standalone labor peace agreement, as other cannabis retailers have done, and continued bargaining negotiations.  ECF 26, ¶26-27.  Mr. Bock proclaims in his Declaration that Local 328 never proposed a standalone labor peace agreement – but, neither did Plaintiff.  ECF 33-1, ¶9.  Notably Mr. Bock does not attest that the parties could not have entered a standalone labor peace agreement.  Plaintiff missed the opportunity to effectively negotiate a standalone labor peace agreement which, Mr. Bock surmises, would have avoided consenting to the present collective bargaining agreement. That was the Plaintiff's choice and not the State Defendants' responsibility.  State law did not cause and will not cause Plaintiff harm by coercing collective bargaining negotiations because State law simply did not require it.

3

Plaintiff's cited case law, as discussed below, does not lend a hand to its fatal flaw – lack of causation. Plaintiff conflates their collective bargaining agreement with the Cannabis Act's labor peace agreement requirement in its attempt to harmonize Plaintiff's cited case law with the allegations contained in its Complaint. This is nothing more than a charade. The collective bargaining agreement is not a condition precedent of the labor peace agreement requirement and not even indirectly related. The Plaintiff decided to enter into the collective bargaining agreement on its own accord. Further, Plaintiff does not assert any allegation that it was prevented from or even experienced any difficulties obtaining a labor peace agreement. State Defendants play no role in collective bargaining negotiations and agreements, and therefore did not cause Plaintiff's alleged harm.

Finally, the Declaration submitted by Mr. Bock offers nothing new other than further speculation regarding what he would have done if not for the labor peace mandate. There is nothing set forth by Plaintiff that truly evidences a harm that is a concrete injury that is fairly traceable to State Defendants, especially because it is established law that Plaintiff did not have to agree to the collective bargaining agreement and does not have to agree to future collective bargaining agreements. As the labor peace mandate contained in the Cannabis Act does not require a collective bargaining agreement, Plaintiff has failed to show a concrete harm caused by State Defendants.

## II. Plaintiff's claims of government compelled action and deprivation of rights under the NLRA are not per se injuries.

Plaintiff erroneously suggests that the LPA mandate constitutes a government-imposed obligation and deprivation of rights under the NLRA, and that as such there is a per se injury that obviates the need to demonstrate an injury in fact. ECF 33, pgs. 9-12. However, Plaintiff cannot bootstrap standing merely by arguing that the LPA mandate constitutes compelled government

4

action and/or deprivation of rights under the NLRA without pleading a concrete injury. To overcome a challenge to standing, a challenger of government action must still show a sufficient concrete and imminent injury. Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130 2136 (1992). While Plaintiff relies on Lujan, it is telling that the final prong of a standing analysis set forth by the Supreme Court in Lujan is omitted by the Plaintiff at page 7 of its brief to this Court. ECF 33, pg. 7. "Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Id., at 38, 43, 96 S.Ct., at 1924, 1926. Standing is not established by simply pointing to a governmental regulation that applies to a plaintiff; to challenge the labor peace agreement mandate, Plaintiff must show a particularized and imminent harm that is not speculative or hypothetical. Plaintiff fails to do so.

Plaintiff's cited caselaw – which comes from various other jurisdictions and is not binding on this Court - is also distinguishable because in those cases, unlike here, the plaintiffs pleaded a concrete and particularized injury. For example, in Iowa League of Cities, the plaintiff, although a challenger of governmental regulatory action, was still found to have sustained a concrete, injury-in-fact. Iowa League of Cities v. E.P.A., 711, F.3d 844, 870 (8th Cir. 2013). Particularly, the court specifically stated that "[a]t least some members are *currently* operating under permits that allow them to utilize blending and bacteria mixing zones in circumstances inconsistent with the EPA letters, which they must *imminently* rectify." Id. (emphasis added). As such, the Court found plaintiff's concrete and imminent injury to be a guaranteed increase of cost, as they were now noncompliant, to obey the new regulations (which defendant E.P.A did not dispute said cost). Id. As such, a concrete injury was still an element that had to be satisfied to challenge a government-imposed obligation. Unlike the plaintiff in Iowa League of Cities, the instant Plaintiff cannot and has not identified true, concrete, costs that it imminently faces to comply with the labor peace

5

agreement mandate, especially when even in the absence of the LPA mandate, it is bound by the NLRA to engage in negotiations with Local 328.

In OMYA, Inc. v. Vermont, the regulation at issue was one which limited the number of tractor trailer truck trips on a state highway, directly impacting the plaintiff's use of the highway as it sought to exceed the permitted number of round trips. 80 F. Supp 2d 211, 214 (D. Vt. 2000). The OMYA plaintiff asserted that it required "170 round trips per day in order to meet processing capacity and anticipated customer demand," whereas the permitted number of round trips was limited to 115 per day. Id. Clearly, the direct economic harm to the OMYA plaintiff was the concrete and imminent threat of loss of business and revenue, which established an injury-in-fact required to establish standing. Again, unlike OMYA plaintiff, the instant plaintiff's claim of alleged costs to comply with the labor peace agreement is entirely speculative and far from concrete.

Furthermore, in Feds of Medical Freedom v. Biden, plaintiff challenged an Executive Order which required all federal employees to obtain a COVID-19 vaccination, or else face termination. 63 F.4th 366, 369 (5th Cir. 2023). The court found that the "mandated medical decision alone is an injury." Id. at 387. The injury to the federal employees was not speculative, in fact, it was very clear as the Court determined that the employees were faced with making irrevocable "significant changes" in their healthcare decisions regarding their own bodies. Id. at 386. This is clearly an entirely different scenario, completely irrelevant to the case at hand. The speculative harm in this instant action is incomparable to what the Fifth Circuit concluded was mandated, irrevocable heath care decisions.

The court in Lozano v. City of Houston, 620 F.3d 170 (3d Cir. 2010) also required plaintiff to show that they had sustained a particularized injury despite that the plaintiff challenging a

governmental act.  Further, the Lozano court found that plaintiff had standing to challenge some of the governmental act, but not all of it.  Id. at 187.  Specifically, the Lozano Court held that "the threat of future prosecution can certainly be a sufficiently imminent injury to support Article III standing…[h]owever, that threat must be more than a possibility dependent on multiple contingencies that may never occur.  Id. (internal citation omitted); See, e.g., Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 675 (9th Cir. 1988) (explaining that fears of liability reliant on multiple contingencies do not give a plaintiff standing).  Like the instant Plaintiff, the Lozano plaintiff's alleged harm depended upon a myriad of contingencies that were not certain to occur, therefore the court found that the alleged harm was too speculative/ attenuated to establish a concrete and imminent injury.  Id.

Plaintiff's allegation that it incurred costs to comply with the labor peace agreement mandate is also conclusory and untied to factual allegations that could constitute concrete and imminent harm.  ECF 33-1, ¶7.  The plaintiff in Outdoor Amusement Bus. Ass'n sought to challenge a law regulating employment of non-immigrant workers, requiring employers to receive a favorable labor certification before the potential employee could receive a H-2B visa to work.  Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec., 983 F.3d 671, 680 (4th Cir. 2020).  Id. at 675-76.  The harm alleged stemmed from "the alleged costs and delays that come from the new rules," however, the plaintiff employer "offer[ed] specific facts that several of their members faced increased compliance costs because of the new regulations and delays in getting workers, which caused layoffs, lost revenue, contractual defaults, and even bankruptcy."  Id.  In fact, Outdoor Amusement stated that the "regulations have hurt membership, reduced dues, diverted resources, and increased litigation costs."  Id.  Clearly, the Outdoor Amusement plaintiff provided particularized, nonspeculative, and imminent costs it had incurred and will incur as a

7

result of the governmental regulation.  Id.  This is the opposite of what the instant Plaintiff has put on the table.  A blanket claim that Plaintiff was coerced to enter into the collective bargaining agreement, incurred an unspecified amount of costs to consult an attorney, and future loss of bargaining leverage is certainly not particularized.  More is needed.

Plaintiff offers a slew of more case law (obtained from other federal district courts), all of which found concrete and imminent injuries (satisfying the first prong required of standing), in conjunction with a challenge to a government-imposed act.  ECF 33, Footnote 8.  Clearly, Plaintiff's position that government-imposed obligations are per se an injury is a misstatement of the cited case law and of what is required to demonstrate Article III standing.  Plaintiff cannot avoid its burden of pleading that it has sustained a concrete and imminent injury.

Furthermore, while Plaintiff alleges that the labor peace agreement mandate contained in the Cannabis Act deprives it of rights provided by the NLRA, Plaintiff, again, does not and cannot identify a true, particularized harm it has sustained, or will imminently sustain, as a result.  A possibility of a harm is not enough.  The United States Supreme Court has held that "the practice of presuming collateral consequences (or of accepting the remote possibility of collateral consequences as adequate to satisfy Article III) sits uncomfortably beside the long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record, and that it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  Spencer v. Kemna, 118 S. Ct. 978, 984-85, (1998) (internal quotations and citation omitted).

Plaintiff cites to Northern IL Chapter Builders v. Lavin, No. 04 C 50357, 2005 WL 6046290 (N.D. Ill. Mar. 24, 2005) in support of its argument that a deprivation of right under the

8

NLRA is per se an injury. However, in Lavin, the plaintiff, a nonunion contractor, was challenging a requirement for grant recipients to enter in a "project labor agreement." Id. at 1. The project labor agreement mandate required the employer to agree to certain employee benefits, including "1) minimum hourly wages for each class of labor organization employees; 2) benefits and other compensation for each class of labor organization employee; and 3) that no strike or dispute will be engaged in by the labor organization employees." Id. The Lavin court found that the plaintiff had standing as it was more difficult for plaintiff, a nonunion contractor, to obtain a benefit than it was for members of a union. Id.

The Lavin case is distinguishable from the matter at hand. First, the labor peace agreement mandate in the Cannabis Act *requires nothing of employers*. Unlike the project labor agreement mandate in Lavin which required very specific labor standards be met by the employer, the labor peace agreement mandate in the Cannabis Act requires no such thing. As such, the labor peace agreement at issue here itself causes no alteration of the benefits provided by employers such as Plaintiff. Second, Greenleaf's employees had voted to unionize months prior to the introduction of the labor peace agreement in the Cannabis Bill, whereas the Lavin plaintiff was a nonunion contractor.[2] Again, it was not the statute but the workers who created a unionized workplace. The instant Plaintiff was and is in an entirely different position than the Lavin plaintiff.

Plaintiff cannot avoid what is required of it to overcome the instant challenge of standing. Plaintiff still has the burden of proving standing to proceed with their action, and to do so, they must "show an invasion of a legally protected interest that is both concrete and particularized." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Here, Plaintiff rests upon conclusory allegations of past harm and mere

---

[2] Plaintiff's employees voted to unionize on April 5, 2021, and the labor peace agreement requirement was included in a draft Cannabis Bill for the first time in June, 2021. ECF 30, pg. 3.

speculation about potential future harm that might arise in one way or another. "A controversy is not justiciable if based on contingent future injuries that have not yet arisen." Vose v. Suttell, No. 123CV00039MSMPAS, 2023 WL 6621149 (D.R.I. Oct. 11, 2023) (citing Texas v. United States, 523 U.S. 296, 300 (1998)).

### III. Plaintiff's allegation of harm by way of "loss of leverage" is also pure speculation and not a concrete injury

Plaintiff's claim of a loss of leverage with the union, is also speculative in nature. Particularly, Plaintiff speculates that the labor peace agreement will cause it to have a loss of leverage in future negotiations. ECF 33, pg. 14. However, such a claim is abstract and hinges on *possible* future events that may not transpire as anticipated, or indeed may not transpire at all. To speculate what will occur in future negotiations is "too long and filled with unknowns to satisfy the requirement of standing." Vose v. Suttell, No. 123CV00039MSMPAS, 2023 WL 6621149 (D.R.I. Oct. 11, 2023) (finding that plaintiff was "many steps away from a concrete injury…" as he had not yet taken and passed a more recent bar examination required of him, and thereafter denied admission to the Bar, to suffer a concrete injury). There are many things that can sway negotiations between Plaintiff and Local 328, of which State Defendants are not privy to. To say that Plaintiff will lose leverage in future negotiations solely because of the labor peace agreement requirement is an illusion. Plaintiff fails to plead facts that say otherwise.

Plaintiff references FPL Energy Maine Hydro LLC v. F.E.R.C., 551 F.3d 58, (1st Cir. 2008) in support of its notion that a regulated entity has standing to sue for intangible injuries. However, this case is completely different from the instant action. The FPL Energy plaintiff's new license was stayed due to the State of Maine's recission of a prior regulation, and this harm was found to be an injury in fact because, as a result, plaintiff no longer had an effective license (it was only permitted to temporarily continue operations). Id. at 62. This case has no application to the instant

10

matter as Plaintiff has its license to sell cannabis and does not allege any concrete or imminent belief that it will not obtain a labor peace agreement in the future. Plaintiff simply and speculatively alleges that because of the labor peace agreement requirement, it is at the mercy of Local 328 in collective bargaining negotiation. Moreover, Plaintiff is not "held hostage" by State Defendants. ECF 33, pg. 14. Instead, Plaintiff's requirement that it bargain with its employees is simply because its employees willingly chose to unionize, which occurred even before the labor peace agreement mandate came into existence. Consequently, Plaintiff will have to negotiate with Local 328 for the foreseeable future, not by the hands of State Defendants.

## **CONCLUSION**

For the reasons stated herein, those asserted in the State Defendant's Memorandum in support of their Motion to Dismiss, and any further arguments made at hearing, the State Defendants respectfully request that this Honorable Court grant their Motion to Dismiss.

Respectfully Submitted,
Matthew Santacroce, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; Erica Ferrelli, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; Kimberly Ahern, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; Robert Jacquard, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; Olayiwola Oduyingbo, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission

State Defendants,
BY:

**PETER F. NERONHA**
**ATTORNEY GENERAL**

*/s/ Chelsea Baittinger*
Chelsea Baittinger (Bar No. 9471)
Special Assistant Attorney General
Office of the Attorney General
150 South Main St.
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2058
Fax: (401) 222-2995
CBaittinger@riag.ri.gov

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on November 10, 2023, I filed and served the herein document through the electronic filing system on the attorneys of record. The herein document electronically filed and served is available for viewing and/or downloading from the ECF Filing System.

*/s/ Chelsea Baittinger*