UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREENLEAF COMPASSIONATE CARE CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW SANTACROCE, in his official capacity as Deputy Director of the Rhode Island Department of Business Regulation; ERICA FERRELLI, in her official capacity as Chief of the Office of Cannabis Regulation within the Rhode Island Department of Business Regulation; KIMBERLY AHERN, in her official capacity as Chair of the Rhode Island Cannabis Control Commission; ROBERT JACQUARD, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; OLAYIWOLA ODUYINGBO, in his official capacity as Commissioner on the Rhode Island Cannabis Control Commission; and LOCAL 328 OF THE UNITED FOOD AND COMMERCIAL WORKERS UNION, <br><br> Defendants. | C.A. No. 1:23-cv-00282 MSM-LDA |

**PLAINTIFF GREENLEAF COMPASSIONATE CARE CENTER, INC.'S OPPOSITION TO STATE DEFENDANTS' MOTION FOR LEAVE TO FILE**

The State Defendants have requested leave to file a Supplemental Memorandum in Support of their Motion to Dismiss (the "Proposed Supplemental Memorandum"), but that proposed memorandum does not contain any facts relevant to their motion. Because the proposed memorandum will not aid this Court in considering the motion to dismiss, Greenleaf Compassionate Care Center, Inc. ("Greenleaf") asks this Court to deny leave for the State Defendants to file it. In the alternative, Greenleaf respectfully requests leave to respond to any supplemental memorandum that this Court permits the State Defendants to file.

4875-3708-1256, v.1

**PRELIMINARY STATEMENT**

The State Defendants seek leave to file a supplemental memorandum but fail to articulate why the Proposed Supplemental Memorandum is relevant to the motion to dismiss. *See United States v. One Check in the Amount of $47,000 Payable to Brian Deiorio*, No. 14-CV-14261-ADB, 2016 WL 7197372, at *3 n.1 (D. Mass. Dec. 9, 2016) (declining to consider the arguments raised in a supplemental memorandum because the arguments advanced were "irrelevant" to motion to dismiss). And, in fact, the State Defendants' Proposed Supplemental Memorandum is completely irrelevant to the issues they raised in their motion to dismiss.

The State Defendants assert that Greenleaf's standing would be defeated in the event that Greenleaf's ownership structure changes. As discussed below, this is legally incorrect. But as an initial matter, it is untrue that "[t]he sale of Greenleaf is forthcoming." Proposed Supplemental Memorandum, p. 2. There is no agreement to sell, no negotiations, and no proposed offers. At most, Greenleaf may be marketed. Any purported sale of Greenleaf is at most a future, hypothetical possibility (just like it is with virtually any company).

The documents the State Defendants include with the Proposed Supplemental Memorandum undermine their assertion that there is a certain future sale. The Consent Order in December of 2023, which the State Defendants propose to submit, expressly states that there is no agreement to sell, stipulating that "[t]here shall be no sale of or transaction of the aforementioned business or property without Court approval *or agreement of the parties and intervenor* [the minority shareholder][.]" *Id.* at p. 6 (emphasis added). Hence, there is no sale agreement. Indeed, as established in the Commissioner's Emergency Motion for Instruction (attached to the Proposed Supplemental Memorandum), the parties cannot even agree on the

2

engagement of a marketing professional to market Greenleaf and other companies. ECF No. 41-2 p. 2.[1]

In any event, this case is about Greenleaf, not its shareholders. So, its ownership is irrelevant to standing. Greenleaf is a marijuana business licensed under the Rhode Island Cannabis Act ("Cannabis Act"). Greenleaf brought the present action to contest a portion of that act as preempted by the National Labor Relations Act ("NLRA"). Although the NLRA specifically does not require an employer and a union to reach an agreement, the Cannabis Act requires Greenleaf to enter into a labor peace agreement with a union as a condition of state licensure (the "LPA Mandate"). The LPA Mandate deprived Greenleaf of its rights under the NLRA, and it therefore stripped Greenleaf of its bargaining power in negotiations with Greenleaf's unionized workforce. As a result, the LPA Mandate caused Greenleaf to accept unfavorable terms in its collective bargaining agreement with Local 328. The relevant rights are Greenleaf's; the injuries are likewise Greenleaf's. It is Greenleaf—not any of its shareholders—that brings this action.[2] Any future sale is irrelevant to Greenleaf's standing.

There are other fatal problems with the State Defendants' argument that they should receive leave to file a supplemental memorandum. First, the standing issue the proposed memorandum purports to address is assessed as of the time a complaint is filed; future, hypothetical events cannot affect the question of whether Greenleaf had standing when it filed

---

[1] At a recent hearing, even the Court and the attorney for the Commissioner referred to a possible future sale as an "*if.*" *See* ECF 41-2, pp. 13, 28 (attorney for Commissioner discussing "*if* it does end up resulting in a sale"; Court discussing a distribution "*if* . . . the business gets sold.") (emphasis added)).

[2] In fact, at a recent hearing in the other proceeding that gives rise to the motion for leave, the business expenses of Greenleaf were discussed, and it was agreed that it is proper for Greenleaf to fund this lawsuit—because this is Greenleaf's lawsuit. *See* ECF 41-2, p. 54 (counsel for the Commissioner said: "I understand the grounds for that lawsuit. . . I see the bill and say fine.").

this case in July of 2023. *See Castro v. Scanlan*, 86 F.4th 947, 954 (1st Cir. 2023) (standing inquiry focused on "the facts as they existed at the time the [operative] complaint was filed"). Second, the State Defendants' proposed memorandum takes the idea of a potential future business sale that has not even been agreed-to and is not pending, and pretends it is the same as a liquidation. The argument that "Greenleaf will soon no longer exist" (Proposed Supplemental Memorandum, p. 2) is not supported by its documents.

Accordingly, because the Proposed Supplemental Memorandum is dedicated to advancing arguments that are not relevant to the motion to dismiss, Greenleaf respectfully requests that this Court deny the State Defendants' motion for leave to file. *See United States of America v. Keith Cousin & Rico Perry*, No. CR 20-10071-ABD, 2022 WL 314853, at *2 (D. Mass. Feb. 2, 2022) (considering absence of objection from opposing party as factor favoring court electing to consider a supplemental memorandum).

## ARGUMENT

**I.    Greenleaf is the Plaintiff, and its Ownership Structure Is Irrelevant to its Standing.**

This case was brought by Greenleaf, a licensed marijuana distributor and a corporation organized and existing under the laws of the State of Rhode Island, to assert its rights under the NLRA. Greenleaf is the only plaintiff in this case.

Seth Bock is not a party to this lawsuit. He is a witness. As Greenleaf's founder and current CEO, Dr. Bock has first-hand knowledge and insight into Greenleaf's bargaining process with Local 328 and how the LPA Mandate harmed Greenleaf. Because of that knowledge, he submitted an affidavit in support of Greenleaf's opposition to the State Defendants' motion to dismiss (and that of Local 328). But that did not convert him into a litigant himself.

Because Greenleaf is the plaintiff, and has asserted its own claims, it is irrelevant who its shareholders are. Count I alleges deprivation of Greenleaf's rights under the NLRA. Count II seeks a declaratory judgment regarding the collective bargaining agreement between Greenleaf and Local 328. Neither count relies upon, or even references, Greenleaf's ownership. Even if Dr. Bock had sold his ownership interest immediately before this suit was filed, that would not have affected Greenleaf's claims. Accordingly, there is no basis to permit a supplemental memorandum that purports to address these issues; it would be irrelevant, distracting, and a waste of resources.

## II. Future Events Do Not Change the Standing Analysis.

Moreover, future events—such as the fictional or hypothetical sale that the State Defendants write about—are irrelevant to the constitutional question: Whether Greenleaf had standing when it filed this case in 2023. *See Davis v. Fed. Elec. Com'n*, 554 U.S. 724, 734 (2008) ("the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). Subsequent events do not change the standing analysis. *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006).[3] Therefore, the State Defendants "cannot use post-suit evidence to limit the Court's analysis of whether an imminent risk of harm existed at the time of filing." *United Food and Commercial Workers Union, Local. No. 663 v. U.S. Dep't of Agriculture*, 532 F.Supp.3d 741, 759 (D. Minn. 2021).

---

[3] They can, in appropriate circumstances, be relevant to a mootness argument, on which the defendant has the burden. Here, a mootness argument would be misplaced because Greenleaf has alleged past harm as well as risk of future harm. *See* ECF No. 34 at pp. 12-14 (LPA Mandate injured Greenleaf in past negotiations, and deprived Greenleaf of rights under the NLRA and the Supremacy Clause of the United States Constitution). Moreover, a mootness argument regarding future harm would be premature because nothing has actually changed.

### III.   The State Defendants Confuse a Business Sale with a Liquidation.

Finally, in the State Defendants' bid to argue that future harm is unlikely, they mischaracterize a possible sale as a likely liquidation. Without explanation, they claim: "The facts gleaned from Mr. Bock's divorce proceedings . . . reveal that Greenleaf will soon no longer exist." Proposed Supplemental Memorandum, p. 2. As discussed below, the new documents that the State Defendants seek to submit with the Proposed Supplemental Memorandum support that proposition.

Because standing depends on the facts at the time suit was filed, none of the State Defendants' proffered documents are even arguably relevant. They provide an emergency motion served in February of 2024.[4] That motion includes, as exhibits, a consent order from December of 2023 (ECF 41-2, p. 6) and a transcript from a hearing on January 10, 2024 (*id.* at p. 10). As a matter of law, none of these documents are relevant to whether Greenleaf had standing when it filed suit in July of 2023.

Moreover, none of these documents provide any support for the proposition that "Greenleaf will soon no longer exist." Instead, the documents concern a possible sale of ownership interests in Greenleaf. Marketing efforts toward a possible sale are not a sign that a business will cease to exist. To the contrary: a sale of ownership typically assumes that the business will remain a going concern.

To the extent that the State Defendants rely upon documents submitted by Local 328, those documents are no more relevant. Local 328's documents, too, address a hypothetical future sale. Neither of those documents indicate any possibility, let alone likelihood, that Greenleaf

---

[4] The certificate of service indicates service on February 14, 2023, but the remainder of the document shows that the year was mistyped.

would cease to exist in the future. Nor do these documents demonstrate that there has been any agreement to sell Greenleaf or that any sale is imminent. At most, these documents indicate that there is a possibility that Greenleaf (like any other corporation) *might* have different owners in the future—a change that would have no impact on this litigation.[5]

Finally, as discussed in previous briefs, Greenleaf is required to enter into a new CBA no later than August of 2024. Neither of these documents hint that a sale would be completed before then, even if a sale were theoretically relevant.

## CONCLUSION

For these reasons, Greenleaf asks this Court to deny the State Defendants' motion for leave to file the Proposed Supplemental Memorandum in Support of their Motion to Dismiss. In the alternative, Greenleaf respectfully requests that Greenleaf be granted leave to respond to any supplemental memorandum that is allowed to be filed.

---

[5] It should be noted that Greenleaf planned to oppose Local 328's motion for leave to file a supplemental memorandum as well, but that motion was granted before Greenleaf's response deadline. In any event, the documents submitted by Local 328 are discussed further in Greenleaf's proposed supplemental memorandum filed as Document No. 42-1 on February 27, 2024.

Dated: February 29, 2024

Respectfully submitted,

GREENLEAF COMPASSIONATE CARE CENTER, INC.

By its attorneys,

/s/ *Erika L. Todd*
Gerry Silver
(admitted *pro hac vice*)
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, NY 10019
(T) (212) 660-3096
(F) (212) 660-3001
gsilver@sullivanlaw.com

Erika L. Todd
(admitted *pro hac vice*)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(T) (617) 338-2825
(F) (617) 338-2880
etodd@sullivanlaw.com

/s/ *Adam M. Ramos*
Adam M. Ramos (#7591)
*armos@hinckleyallen.com*
Craig M. Scott (#4237)
*cscott@hinckleyallen.com*
Mackenzie C. McBurney (#10098)
mmcburney@hinckleyallen.com
HINCKLEY ALLEN
100 Westminster Street, Suite 1500
Providence, RI 02903
(T) (401) 274-2000
(F) (401) 277-9600

8

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the within document via mail, e-mail and/or the electronic filing system on this 29th day of February, 2024 on:

| | |
|---|---|
| Marc Gursky, Esq. | Chelsea Baittinger, Esq. |
| GURSKY, WIENS & SHANLEY, | Special Assistant Attorney General |
| Attorneys at Law, Ltd. | Office of the Attorney General |
| 20 Centerville Road | 150 South Main St. |
| Warwick RI 02886 | Providence, RI 02903 |
| *mgursky@rilaborlaw.com* | *CBaittinger@riag.ri.gov* |

The document is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Mackenzie C. McBurney*
